PETER GANSER *vs.* FIREMAN'S FUND INSURANCE COMPANY.

December 27, 1887.

**Principal and Agent—Insurance.**—M., the agent of an insurance company, resigned his agency, and, seeking the appointment of his son in his place, wrote as an inducement that the work of the latter would be under his immediate supervision. Another agent, through whom this was communicated to the company, added that the business would run the same as before, but that he, M., "desires his son to learn the business, and have some responsibility, and takes this method." The son having been thereupon appointed, *held,* that the evidence justified the finding that M. had still authority to act for the company.

**Evidence—Parol Contract of Insurance.**—Evidence in the case considered as justifying a finding that a parol contract of insurance had been made.

**Same—Materiality.**—Any fact necessary to an understanding of other material and relevant facts in a case is admissible in evidence, *e. g.*, an expired contract of insurance, in connection with a subsequent parol agreement for the reinsurance of the same property, made with reference to the former contract.

**Contract — Evidence of "Understanding" — Conduct of Parties.**—A transaction being such that the parties may or may not have under-

stood it alike as an agreement, the testimony of the parties may be received directly as to their understanding. The subsequent acts of a party may also be shown by the adverse party as showing his understanding of the agreement.

**Evidence—Impeachment of Witness.**—The former declarations of a witness offered by the adverse party were properly excluded, they not being contrary to his testimony.

**Practice—Evidence of Defence not Pleaded.**—There being no averment by the defendant that the contract provided that fraud in the proof of loss should avoid the contract, and it not appearing that the plaintiff consented to litigate that question, the defendant was not in a position to avail itself of that defence.

Appeal by defendant from an order of the district court for Steele county, *Buckham*, J., presiding, refusing a new trial, after a verdict for plaintiff. A former appeal is reported, 35 Minn. 372.

*Berry & Morey*, for appellant.

*A. C. Hickman*, for respondent.

DICKINSON, J. This action is upon a parol contract of insurance, alleged to have been made July 28, 1884. The principal question is whether the case shows the making of any such contract. For several years prior to March, 1884, one E. Malony had been conducting insurance business for the defendant as its agent at Owatonna, in this state, but at that time he formally resigned his agency, and procured his son, A. A. Malony, to be appointed as agent in his stead. There were some questions as to the authority of the elder Malony to continue to act for the defendant as he did assume to do, to which we shall hereafter refer. In 1880 the plaintiff obtained an insurance from the defendant, through its agent, E. Malony, for one year, for the sum of $2,000; $1,000 of this being upon the machinery, horse-power, and brewery apparatus of a brewery, and $1,000 upon the stock of barley, malt, hops, and beer therein. This policy was to run until July 1, 1881, but was renewed from year to year, through the same agent, until it finally expired, July 1, 1884. A few months before that time the plaintiff put a boiler and engine into the brewery, consent to do so being indorsed upon the policy at the office of the agent.

The evidence tended to show that at that time it was understood between the plaintiff and E. Malony, who had then resigned his agency as above stated, that when that policy should expire, (July 1, 1884,) a new policy should be issued instead of a mere renewal, and that $500 of the $2,000 insurance should be placed upon the engine and boiler, the terms of the insurance remaining in other respects the same as before. Nothing further was done until a few days after that policy had expired. Then the agent, A. A. Malony, went to the plaintiff to learn how he desired the new policy to be made. The evidence tends to show that the plaintiff then named the same terms as had been before contemplated in the conversation with E. Malony, and that the agent assented to this. However, for some reason, no policy was then made. We need not particularly consider whether the parties at that time really understood the matter alike, nor the reason why a policy was not then issued, although the evidence tends to show that the parties then supposed the agreement to be complete, and did not anticipate any delay in the making of the policy. The case went to the jury upon the theory that the contract, if there was any contract, was perfected a few days after this, on the 28th of July.

On the day last named, the elder Malony, at the request of his son, A. A. Malony, went to the plaintiff to ascertain again how he wanted the insurance placed; and the terms were again stated and arranged in accordance with what, according to the plaintiff's evidence, had been before agreed upon. Malony then returned to the office, and a policy was made out in accordance with this agreement, by one Crandall, a clerk in the office, who signed the agent's name to it. It was not, however, delivered until the next day. In the mean time, in the evening of the 28th, the property was partially destroyed by fire. It further appears that it is the custom of this defendant, and of insurance companies generally, to make the contract of insurance to run, under ordinary circumstances, from noon of the day when the agreement is made, and, as the evidence went to show, to collect premiums at the end of the month.

It was left to the jury to determine whether a complete agreement was effected at this last interview between the plaintiff and the elder

Malony. We are of the opinion that this was right, and that the verdict in favor of the plaintiff was justified by the evidence. It was only necessary that the plaintiff and the defendant, through an authorized agent, should agree upon a present insurance, and upon terms which were certain. The evidence conduces to show that, in view of the facts relative to the former insurance, and the negotiations which had taken place before this 28th of July, it only remained, in order to complete an agreement, to agree upon the manner in which the $2,000 should be apportioned,—even if that had not already been once agreed upon. This was agreed upon between the elder Malony and the plaintiff at this time.

Whether Malony had authority to thus act for the defendant was left to the jury to determine. The evidence justified a conclusion that he had such authority. In his letter of resignation to the defendant, the elder Malony, requesting the appointment of his son, writes: "His work will be under my immediate supervision and inspection, and I shall at all times render him assistance." Another agent of the defendant, communicating with the company upon this subject, adds: "The business will run same as heretofore, but he desires his son to learn the business, and have some responsibility, and takes this method." The appointment, under such circumstances, of a person as agent, who is shown to have been without experience, may fairly be deemed to have been made with the expectation that the former agent would still act in the business for the interest of the company, and that would involve an authority so to act. The reason just stated sufficiently answers the objections made to the evidence of conversations had with the elder Malony.

Proof of the former insurance was proper, for it formed in part the basis upon which the negotiations immediately in question proceeded. Such negotiations seem to have included, without specific mention, some of the elements of the former insurance, such as the company in which the risk was to be placed, the period of time, the property insured, and probably other things. For a similar reason, there was no error in allowing proof of an indorsement on the former policy of a consent to the placing of the engine and boiler upon the premises, although that indorsement was not made by the agent.

In the testimony of witnesses as to the "understanding," in respect to certain matters, that word seems to have been used to express the idea of an agreement, rather than that of a mere mental condition. There is one exception to this, where the plaintiff was allowed to testify that he understood from the negotiations which had been detailed that the property was insured. This was proper evidence, within the rule laid down in *Berkey* v. *Judd*, 22 Minn. 287, 297, especially where the transaction upon which an asserted agreement of minds is predicated was of such a nature that it may or may not have resulted in such an agreement.

The testimony which the appellant claims to have involved the "opinions" of the witnesses is not subject to that objection. The testimony, as we understand it, was as to the fact of a custom, and as to who gave authority to one Crandall to do certain things. There was some immaterial evidence received, such as that relating to the authority of Crandall to make contracts of insurance; but we think that none of this evidence could have affected the result of the trial, for the case of the plaintiff, as presented to the jury, did not in any manner depend upon any such testimony. It was not claimed that Crandall made any contract which could affect this case.

The receiving in evidence of the policy, made out and signed by Crandall, (with the agent's name,) but not delivered until after the fire, was not error. It was made by direction of the elder Malony, after his last interview with the plaintiff, and, as the question of his authority to represent the company was for the jury, this instrument might also be considered as an act done in the course of his agency, if he had the authority of an agent, and indicating his own understanding of the verbal agreement claimed to have been completed on that day, and in pursuance of which, as it might be urged, this policy was made out. The bearing of this evidence upon the issue was explained to the jury.

It was not error to exclude Exhibit R, offered by the defendant as a part of the cross-examination of the witness A. A. Malony. This was a certificate made by him to the effect that he did not write, issue, nor deliver the policy to Ganser. The testimony of this witness had not been to the contrary of this, and it had already been shown

by other evidence on the part of the plaintiff that A. A. Malony did not write, sign, or deliver the policy.

The refusal of the court to charge as requested as to the effect of any fraudulent representations in the proof of loss was right; for it was not alleged in the answer that, by the terms of contract, such fraudulent representations should avoid the same, nor is it apparent that the plaintiff consented to litigate this question.

There are some other questions raised as to the rulings of the court, which we do not deem it necessary to state, and will only say that we find no error.

Upon the whole case the order refusing a new trial is affirmed.