### HUTCHINGS v. WINSOR, Ex'x.

No. 11548—Opinion Filed July 24, 1923.

1. **Appeal and Error—Necessity for Supersedeas Bond.**

Under the statutes of this state, an appeal will lie from the district, superior, or county courts to the Supreme Court without entering into a supersedeas bond. The only purpose and effect of such a bond is to stay execution or other proceedings to enforce the judgment.

2. **Witnesses—"Testimony in Respect to Transaction with Deceased Person"—Mere Denial of Transaction.**

In an action brought by the executrix of a deceased person to recover a sum of money which she alleged had been loaned the defendant by the deceased during his lifetime, testimony sought to be elicited from the defendant that he had not borrowed any sum of money whatever from the deceased is not testimony in respect to a transaction or communication had by him with a deceased person within section 5049, Revised Laws of 1910.

3. **Same.**

In such action a witness may testify to facts of which he has knowledge independently of any transaction or communication with the deceased, and may deny an alleged transaction or communication between decedent and himself.

4. **Appeal and Error—Record — Excluded Evidence.**

Record examined, and held, that the trial court was fully advised and informed of the substance of the testimony excluded, and that the facts as disclosed by the record in the case at bar do not bring it within the rule laid down in Gross et al. v. Lincoln et al., 81 Okla. 87, 196 Pac. 960.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Osage County; Preston A. Shinn, Judge.

Action by Mrs. G. L. Winsor, executrix, against G. W. Hutchings to recover for money loaned. Judgment for plaintiff, and defendant brings error. Reversed.

Grinstead & Scott, for plaintiff in error.

Paul N. Humphrey, for defendant in error.

Opinion by FOSTER, C. Defendant in error, plaintiff below, commenced this action in the district court of Osage county on the 3rd day of May, 1919, against plaintiff in error, defendant below, to recover the sum of $1,545.42. For convenience the parties will be referred to as they appeared in the court below.

The petition alleged that on March 25, 1916, plaintiff's testator loaned to the defendant the sum of $1,545.42, and that to evidence said loan the defendant on the 24th day of October, 1917, thereafter, signed and delivered to the plaintiff's testator, in writing, a certain memorandum, in words and figures as follows:

"Pawhuska, Oklahoma.
"October 24-17.

"This is to certify that I owe G. T. Winsor of Chicago, fifteen hundred forty-five & 42-100 dollars, with interest from March 25th 1916.

"G. W. Hutchings."

That thereafter G. L. Winsor died, and the plaintiff, his wife, had been duly appointed and qualified as executrix of his estate; that due demand had been made upon the defendant for the payment of said indebtedness and payment refused by the defendant, and plaintiff demanded judgment in the sum of $1,545.42, with interest from the 25th of March, 1916, until paid, and for cost of suit.

To the petition of the plaintiff, the defendant denied generally and specifically each and every allegation in said petition contained, and further answering, alleged that the sum of money claimed to be due plaintiff was the result of certain wagers made upon the price of grain upon the Kansas City and Chicago Boards of Trade; that said transactions were and are commonly known as dealing in futures, by means of which all parties connected there-

with and joining therein were betting and wagering money upon the fluctuations of the grain markets as registered in the exchanges conducted by said boards of trade; and that it was not the intent or purpose of any party connected therewith to deliver grain sold or to receive grain purchased in said transactions, but it was the sole purpose and intent to either profit or lose in money, and by reason thereof, such transactions were gambling contracts and constituted transactions obnoxious to the express public policy of the state of Oklahoma, and in violation of the Constitution and laws of the state of Oklahoma, and were void; and that the amount claimed to be due the plaintiff was solely the result of the balance resulting from sales and purchases of futures on margin upon said exchanges and not otherwise.

The reply of the plaintiff was a general denial of each and every allegation set forth in the answer.

A jury being waived, the cause was tried to the court on the 19th day of March, 1920, and resulted in a judgment against the defendant for the full amount sued for, to which the defendant excepted, and prosecutes his appeal to this court to review said judgment and assigns as error the action of the trial court in overruling and denying his motion for a new trial.

The plaintiff has filed a motion to dismiss the appeal of the defendant, claiming that this court has no jurisdiction to review and determine the matters in controversy on this appeal, for the reason that the record shows that no supersedeas bond was filed by the defendant pursuant to the provisions of section 5254, Revised Laws of Oklahoma, 1910.

The question raised by plaintiff's motion has been before this court many times, and in each case the court has held that the only purpose and effect of a supersedeas bond is to stay execution upon the judgment appealed from, and that the right of appeal does not depend upon the giving of such a bond. State ex rel. Mose et al. v. District Court of Marshall County, 46 Okla. 654, 149 Pac. 240; Starr v. McClain, 50 Okla. 738, 150 Pac. 666; State ex rel. Hogan et al. v. District Court. 25 Okla. 871, 108 Pac. 375; Cusher v. Ricketts, 72 Oklahoma, 179 Pac. 593.

Upon the authority of the above cases the motion of the plaintiff to dismiss the appeal is overruled and denied.

At the trial, the defendant offered himself as a witness, and the following questions were propounded to him by his counsel:

"Q. On or about the 25th day of March, 1916, Mr. Hutchings did you borrow from G. L. Winsor or G. T. Winsor, any money, specifically the sum of $1,545.42?

"A. No, sir.

"By Mr. Humphrey: To which question the plaintiff objects, and further objects to the witness testifying to any transaction whatever had with G. T. Winsor, and as grounds for such objection cites section 5049 of the Revised Laws of 1910.

"By the Court: Objection sustained.

"By Mr. Grinstead: Exception.

"Q. Mr. Hutchings, prior—

"By the Court: Now, as I understand it the party to whom the memorandum was issued is the deceased and it is the executor claiming, is it?

"By Mr. Grinstead: Yes, but back of this proposition this man didn't owe anything to Winsor. Now, I presume that I will be permitted to show that because that doesn't refer to any transaction or communication—

"By the Court: I take it that under that section he couldn't testify anything about Winsor at all.

"By Mr. Grinstead: I want to make record. Mr. Hutchings. prior to October 24, 1917, and on that date were you indebted in any amount to G. L. or G. T. Winsor— mentioned in the pleadings in this case?

"A. No, sir.

"By Mr. Humphrey: Same objection, if the court please.

"By the Court: Sustained.

"By Mr. Grinstead: Exception.

"Q. Mr. Hutchings, on and prior to October 24th, 1917, did you meet Mr. Winsor— G. L. Winsor or G. T. Winsor, as the case may be, in Pawhuska?

"By Mr. Humphrey: Same objection, if the court please.

"A. I think some time about that time, about two or three years ago.

"Q. About the date of this paper that is in evidence here?

"A. Yes, sir.

"Q. What, if you know, was his business here at that time?

"By Mr. Humphrey: Same objection, if the court please.

"By the Court: I think the statute disqualifies him as a witness—the objection is sustained.

"By Mr. Grinstead: Exception."

It is insisted by defendant that under the rule laid down by Mr. Commissioner Ames, in Williams v. Joins, 34 Okla. 733, 126 Pac. 1013, no proper objections were made by the plaintiff to the evidence offered by the defendant, and that for this reason the action of the court in excluding such evidence constituted reversible error.

We do not think that this objection of counsel is well taken. While it is true that an objection of the kind under consideration must be made to the competency of the witness, and not merely to the competency of the testimony offered by the witness, we cannot say upon a survey of the entire record that the objections did not go to the competency of the witness. Whether the objection as made was sufficient standing alone to call the court's attention to the nature of the objections raised is unimportant in view of the fact that the record clearly shows that the court understood that the objections went to the competency of the witness and not merely to the competency of the testimony offered by the witness. That this is true is made clear by the court's own statement, as follows:

"I think the statute disqualifies him as a witness."

It is well settled in this jurisdiction that where it is clearly apparent from the whole record that the error complained of has not in fact operated to the prejudice of the party complaining, the error, if any, will be considered harmless and will not constitute reversible error. Ward v. Richards, 28 Okla. 629, 115 Pac. 791; Kuhl v. Supreme Lodge Select Knights & Ladies, 18 Okla. 383, 89 Pac. 1126; Shawne Nat. Bank v. Wooten et al., 24 Okla. 425, 103 Pac. 714.

A more serious question, however, is presented when we come to consider the refusal of the court to permit the defendant to testify in answer to a question propounded by his counsel, as follows:

"On or about the 25th day of March, 1916, did you borrow from G. L. Winsor or G. T. Winsor, any money, specifically the sum of $1,545.42?"

The court refused to permit the defendant to answer this question on the ground that under section 5049, Revised Laws of 1910, he was attempting to testify to a transaction or communication had personally by him with a deceased person in an action in which the adverse party was the executor of such deceased person, and was therefore incompetent as a witness. In

this we think the court committed reversible error. It must be noted that the basis of the plaintiff's action was the loan of $1,545.42 to the defendant long prior to the time at which the memorandum of indebtedness introduced in evidence was executed. The foundation of the action was the loan of the money, the memorandum of indebtedness being only an evidence of the prior transaction. The existence of the indebtedness, therefore, was a matter directly in issue under the pleadings in the case, and for the defendant to be denied the right to testify concerning the existence of the indebtedness, in our judgment, was a denial to him of a substantial right. The manifest object of the question was to show as an independent fact that defendant had not had the transaction with the plaintiff's testator which her action was founded upon. To state that he had not had such a transaction is the very opposite of testifying concerning a transaction or communication with plaintiff's testator.

We do not think that the testimony sought to be elicited comes within the provisions of section 5049, supra, making a witness incompetent to testify concerning transactions or communications had personally by such person with a deceased person where the adverse party in the action is the executor of such deceased person.

In 40 Cyc. 2313, the rule is announced as follows:

"The statutes usually exclude testimony concerning transactions or communications with a person since deceased or incompetent, leaving parties and interested persons competent to testify as to any independent facts within their knowledge which do not involve such transactions or communications with the decedent."

And again, at page 2317:

"A witness may testify to the mere fact that he had a communication or transaction with decedent, without stating what it was, or may deny an alleged transaction or communication between decedent and himself."

In 28 Ruling Case Law, page 497, it is said:

"It is not to be doubted, however, but that a witness may testify to facts of which he has knowledge independently of any transaction with the deceased, although they may relate to or grow out of a transaction with which the deceased was concerned."

In Sinclair v. Stringer, 80 Okla. 218, 195 Pac. 771, our Supreme Court held:

"Testimony by the plaintiff that she worked in the home of the deceased as a practical nurse, when the latter was at home, and could not have been ignorant of such services, and testimony as to the duration of such services, the reasonable value thereof, and that she had not been paid, is not testimony in respect to a transaction or communication had by her with a deceased person within section 5049, R. L. 1910."

This rule is upheld and approved in the following cases: Coblentz v. Putifer, 87 Kan. 719, 125 Pac. 30; Murphy v. Hindman, 58 Kan. 184, 48 Pac. 850; Parks v. Parks, 10 Kan. App. 173, 63 Pac. 280; Clary et al. v. Smith, Adm., 20 Kan. 83; Sarbach v. Sarbach, 86 Kan. 894, 122 Pac. 1052; McKean et al. v. Massey, Adm'x, 9 Kan. 600.

In Coblentz v. Putifer, supra, the court said:

"When it was alleged a deed was procured by undue influence of a son upon his mother, he may state whether at any time he asked or requested her to make such deed when the manifest object of the question was to show that he did not. To state that he did not ask or request such deed is the very opposite of testifying concerning a transaction or communication with the deceased grantor."

The above rule was upheld and approved in the recent case of R. W. Miller, Adm'r of the Estate of John Thomas Neal, v. H. L. Nanny, 91 Okla. 150, 216 Pac. 262.

Counsel for plaintiff argues that the defendant cannot be heard to complain of the error of the court below in refusing to permit plaintiff to testify, if error it was, for the reason that no proffer or showing of the evidence sought to be introduced was made in the record, and that under the rule announced in Gross et al. v. Lincoln et al., 81 Okla. 87, 196 Pac. 960, he cannot be heard to say that there was error by the court in excluding such testimony. We do not think there is any merit in this contention.

It is clearly apparent from a survey of the whole record that the manifest object of the interrogatory propounded to the witness Hutchings by his counsel was to elicit a denial that he had ever borrowed the sum of $1,545.42 from the plaintiff's deceased husband. That this is true is conclusively established, not only by the answer of defendant in which he entered a general denial that he had ever borrowed any sum from the plaintiff's testator, but by his answer to the interrogatory itself, which was a specific denial that he had ever borrowed

said sum or any other sum from plaintiff's testator.

Viewing the record as it is, the trial court had before it the specific denial of the defendant that he had ever borrowed any sum from the plaintiff's testator, and was therefore as fully advised and informed of the substance of the testimony excluded as if there had been a formal offer or showing made of the testimony in the record. The effect of the ruling of the trial court was to exclude the testimony after it had been informed of the substance of the testimony, and the facts in the case at bar, in our opinion, do not bring it within the rule laid down in Gross et al. v. Lincoln et al., supra.

For the reasons stated in the opinion, the cause is reversed and remanded for a new trial.

By the Court: It is so ordered.