Argued June 2; reversed July 28, 1931

STATE *v.* MILLER

(2 P. (2d) 8)

*Frank E. Swope,* of Portland (Powers & Swope and Maurice Tarshis, all of Portland, on the brief), for appellant.

*John Mowry,* Deputy District Attorney, of Portland (Lotus L. Langley, District Attorney, of Portland, on the brief), for the State.

ROSSMAN, J. June 3, 1930, at eleven o'clock p. m., the defendant and his brother officer, one B. B. Baird, discovered an automobile parked in the darkness upon one of the suburban streets of the city of Portland. In the car were two individuals, both very young, who identified themselves as Irving Rodensky and Esther Goldberg, but they later added that they were husband and wife, secretly married. The officers testified that their position towards each other was a compromising one, and that they arrested them upon a charge of disorderly conduct. The two young folks testified that their arrest was on a charge of having violated one of the ordinances of the city of Portland prohibiting the parking of automobiles at nighttime without a display of lights. After the arrest, Rodensky was placed in the car of the defendant and they thereupon proceeded towards the business section of Portland, while the other car in which Mrs. Rodensky remained, and of which Baird took possession, followed. On the way to the business section, in which the central police station is located, the officers stopped the cars and momentarily conferred with the result that the course was

altered in the direction of the home of Mrs. Rodensky's parents. When the cars arrived there the defendant conferred with the girl's father upon the porch of the home beyond the hearing of anyone except the two participants. The state contends that in the course of this conference the girl's father paid the officer $25 as consideration for a promise upon his part not to file a complaint against the prisoners and to refrain from their prosecution. The defendant claims that he neither requested nor received any money whatever, but that he took the two Rodenskys to the home of Mrs. Rodensky's parents so that he could investigate the claim of marriage and "turn them over to him (the father) and let him handle it." Whether the alleged bribe money was paid by Goldberg and received by the defendant or not, it is nevertheless agreed that both prisoners were released to Goldberg at the conclusion of the brief conference, that no complaint was filed against them, and that no prosecution occurred.

Since the only assignments of error which we believe reveal any prejudicial error arise out of the circumstances related above, we shall not mention the facts which followed. After the defendant, as a witness in his own behalf, had related substantially all of the above developments, his counsel, referring to his release of the two prisoners, inquired of him: "How did you happen to let them go" to which the witness replied: "Good police work to let them go." At this point the district attorney interposed an objection which, after much colloquy between the presiding judge and counsel, was sustained with a ruling that "the deduction from the occurrence is to be made by the jury, not by the witness. * * * Why a man let a person go is not a physical fact, it is a conclusion;

\* \* \*.'' When Baird was upon the witness stand defendant's counsel inquired of him: ''Why did you not take them to the police station'' to which he replied: ''Well, I would not consider it very good police work if I did.'' At this point the district attorney's objection, after more discussion, was sustained with a ruling which held, among other grounds, ''if it was lawful, then it makes no difference; if it is unlawful, his motive is immaterial.''

It will thus be observed that the state contended that the defendant released his prisoners upon receipt of the sum of $25, while the defendant apparently desired to explain his conduct by claiming that ''good police work'' demanded the release, after he had verified the claim of marriage and found that the girl's parents were willing to take the young folks in charge. The state's evidence was received, but the defendant's presentation of his explanation was obstructed, as indicated above.

■■ It is clear that something transpired during the brief visit at the Goldberg home which caused the defendant to abandon his arrest and release his prisoners. The defendant contends in his brief that if he and Baird had been permitted to complete their answers their explanations would have shown that their conduct was commendatory and thus the defendant's denial that he had received $25 bribe money would have been materially strengthened by supplying a practical explanation for the release. The excluded answers, the defendant urges, would have shown the ''motive'' for the release. This case, we believe, is peculiarly one in which the motive, reason or emotion that prompted the act is the important fact at issue. The act itself, that is, the release, was

freely admitted, leaving as the question for determination the reason or motive which prompted the act. We quote from Wigmore on Evidence (2d. Ed.), § 119: " 'Motive' may be in issue, in the sense of reason or ground for conduct; * * * 'Motive' may be in issue, in the sense of malice or criminal intent." And from section 118 of the same volume, we quote: "Conceiving an emotion, then, as a circumstance showing the probability of appropriate ensuing action, it is always relevant." We deem it unnecessary to cite the numerous decisions from this court holding that while proof of motive ordinarily is not essential, nevertheless, proof showing the presence of motive or its absence is always admissible. But the ruling of the circuit court besides stating that the defendant's motive was immaterial also held that the officer's reason or ground for releasing his prisoners must be established by physical facts and could not be evidenced by his direct statement. This conception of the law we believe is erroneous. In *Mahon v. Rankin*, 54 Or. 329 (102 P. 608, 103 P. 53), counsel for the plaintiff, who was a real estate broker suing for a commission, asked the witness-plaintiff what he meant when he used the word "we" in a letter written to the defendant. In the absence of the explanation, which the trial court permitted the plaintiff to make, it would have appeared that the services had not been rendered for the defendant. In sustaining the ruling of the circuit court, this court said:

"It seems to be the general rule in this country that whenever, in either civil or criminal cases, the intent of a person in the doing of an act, or in the uttering of a declaration, becomes material, such person, whether a party to the cause or not, may testify directly as to what his intention was in the given instance: 7 Enc. Ev. 596. Such testimony is admis-

sible, no matter how inconclusive, unsatisfactory or inconsistent it may be, as such characteristics affect only its weight.''

In *Smith v. National Surety Co.*, 77 Or. 17 (149 P. 1040), the plaintiff, who alleged that one Boaz had robbed her of jewelry of the value of $1,500, brought an action upon her policy of insurance to recover her loss. It appeared that the plaintiff had handed the jewelry box to Boaz, pursuant to his demand. While upon the witness stand her counsel asked her: ''What was the influencing motive that induced you to get the jewelry?'' In sustaining the ruling of the circuit court which held that this question was permissible, we said:

''We think that it was competent for the plaintiff to testify as to the intent or motive which prompted her to get out her property in response to the demand of Boaz: 16 Cyc. 1187, and cases there cited.''

In *Boord v. Kaylor,* 114 Or. 62 (234 P. 263), being an action based upon a charge of fraud, we held that it was competent for the plaintiff in such an action to testify that he believed the representations made by the defendant and that he was ignorant of the truth.

The cases just reviewed, of course, did not concern charges of bribery, but in both *Smith v. National Surety Co.* and *Boord v. Kaylor* the explanation was sought concerning the motive or reason which prompted the act that subsequently precipitated the litigation. The above three Oregon cases seem to apply a rule that if acts material in a case are proved, and a question arises as to the character, effect, or reason for the acts, the intention of the party acting may be shown by his own statement.

But before concluding the matter let us examine the authorities in the other jurisdictions, especially

those concerning motive in bribery cases. In *The People v. Peters*, 265 Ill. 122 (106 N. E. 513, Ann. Cas. 1916A, 813), the defendant, having been convicted upon a charge of bribery, contended that the court erred in denying him permission to testify as to his intention in paying the sum of $20 to the official. In reversing the conviction, the Supreme Court of that state held:

"The prevailing rule of law, sustained by the great weight of authority, is, that whenever the motive, intention or belief of a person is relevant to the issue, it is competent for such person to testify directly on that point. (Jones on Evidence, 2d Ed., § 170.) This court has held that where the intent is an important element constituting the offense the accused has the right to testify what his intention was in the commission of the act. (*Wohlford v. People*, 148 Ill. 296.) The court erred in not permitting plaintiff in error to answer the question."

In *State v. Ames*, 90 Minn. 183 (96 N. W. 330), a police officer had been convicted of the crime of accepting a bribe and it was contended on appeal that the trial court erred when it permitted the individual who paid the bribe money to state her reason for having given it. This contention was disposed of by the Supreme Court thus:

"It is also contended, in connection with the testimony of witness Mills, that it was error to permit her to testify to the conclusion that the money was paid for protection. There was no error in the ruling of the court on this subject. It appeared from her testimony that defendant had agreed to protect her in consideration of such payment. It was also shown that she was not indebted to Cohen in any way, or to any person connected with the city administration. The objection to the question for what purpose she paid the money was properly overruled: *Ganser v. Fireman's Fund Ins. Co.*, 38 Minn. 74 (35 N. W. 584). At any rate, it in no way prejudiced defendant. Her

answer was not conclusive, and the question was submitted to the jury to determine from all the evidence before them.''

In *Alexander v. The State,* 118 Ga. 26 (44 S. E. 851), being a prosecution upon a charge of murder, the co-indictee was denied by the trial court the right to state that he ''did not intend to have any difficulty.'' In holding that the ruling was erroneous, the appellate court stated:

''A man may frequently testify as to his motives, intention and state of mind. When otherwise relevant, the state of mind can be proved as an independent fact: *Royce v. Gazan,* 76 Ga. 80 (5); *Baxley v. Baxley,* 117 Ga. 60. What the person himself testifies is not necessarily conclusive, because the jury is authorized to apply the homely maxim that 'actions speak louder than words', and from one's act they may determine that the intention was directly opposite from what he says it was   *   *   *. But while the jury is not bound to accept the statement of a witness as to what was his mental state, it was here relevant and important, and would necesitate the grant of a new trial but for the fact that the witness later in his testimony made this proof.''

In *Gardom v. Woodward,* 44 Kan. 758 (25 P. 199, 21 Am. St. Rep. 310), the principal question at issue was the intent accompanying an alleged fraudulent conveyance. The court below sustained objections which inquired concerning the intent. Upon appeal these rulings were held erroneous. We quote from the decision as follows:

''A vital question involved in the case was whether the aforesaid sale was made in good faith, or was a mere sham, and made for the purpose of hindering, delaying and defrauding Gardom's creditors. Whether the sale was in good faith or not depended upon the state or condition of Gardom and McQuistan's minds, their thoughts, intentions, motives; and the aforesaid

questions were asked for the purpose of eliciting evidence tending to show what the condition of Gardom's mind, in particular, was—his intentions and motives. Dr. Wharton, in his work on the Law of Evidence, (§ 508) uses the following language: '* * * Yet where a party is examined as to his own conduct, he may be asked as to his motives, his testimony to such motives being based, not on inference, but on consciousness.' * * * The condition of a man's mind with reference to what he thinks, feels, believes, intends, and his motives, is always a fact, and it is a fact which is often required to be ascertained both in civil and in criminal cases; and only one person in the world has any actual knowledge concerning that fact, and that person is the one whose condition of mind is in question; and where he is a competent witness to prove such condition, he may testify to the same directly. Other witnesses can testify only to extraneous facts tending to prove this condition. He may also testify to such extraneous facts, but he may testify directly as to what the condition of his own mind is or was at any particular time, or on any particular occasion. The court below held otherwise. The court below held that such direct testimony of the witness himself as to the condition of his own mind was worthless. If this testimony of the witness had been admitted, the finding of the court below might perhaps have been different from what it was.''

In Wigmore on Evidence (2d Ed.), section 581, will be found an exhaustive collection of cases which have determined the propriety of permitting a party to testify to the intent accompanying his act. Their effect is thus summarized by Dean Wigmore:

"In only one jurisdiction has any clear sanction been given to a rule that parties or other persons are disqualified to testify to their own intent or motive. In all others where the question has been raised there is a general repudiation of that notion in all its aspects.''

■ The above authorities, as well as reason, warrant the conclusion that when the mental state of a person is a material fact the individual himself may testify directly thereto. Hence, the defendant should have been permitted to state why he released his prisoners when he reached the Goldberg home and why he failed to file a complaint against them. The rulings of the circuit court, therefore, constituted error.

■ But the state contends that the error was rendered harmless because the court did not strike out the explanation made by the defendant that it was "good police work to let them go" after having sustained the state's objection. It likewise points to Baird's reply, "I would not consider it very good police work" to take the prisoners to the police station. The state contends that thus the defendant succeeded in presenting to the jury his explanation of the prisoners' release. It will be recalled that the two above answers were followed with objections made by the district attorney, extended colloquys, and rulings by the court which sustained the objections declaring as the ground for the rulings, among other reasons, "motive is immaterial." It does not appear that the above answers constituted the sole explanation which the defendant and Baird desired to make; to the contrary, it seems reasonable to assume that both would have amplified their answers had they been permitted to do so. It is true that the court did not expressly direct the jury to disregard the answers, nor was an order made striking the answers from the record, but it seems evident that the defendant was deprived of the effect of the answers by the extended argument, by the ruling of the court, and by the announcement that motive was immaterial. We believe that the situation now before us is very similar to that in *State v. Marco,* 32 Or. 175

(50 P. 799), wherein we held that the witness' answer was nullified by the ensuing objection, argument, and ruling. We conclude that the state's contention that the defendant received the benefit of the witness' answer, despite the erroneous ruling, is without merit.

█ The district attorney next contends that, since the rulings which sustained the objections were not followed with offers of proof, the assignments of error are unavailable. While it is true, as is indicated by the numerous authorities cited in the district attorney's brief that an offer of proof must be tendered when an objection is sustained to a question addressed to the party's own witness, if it is desired to complain of the exclusion of the answer, and the purpose of the question or the materiality of the reply is not indicated by the inquiry, nevertheless, where the question shows its purpose and the materiality of the evidence sought to be elicited, an offer of proof is not necessary: *United States v. Chichester Chemical Co.*, 298 Fed. 829; *Linderoth v. Kieffer*, 162 Minn. 440 (203 N. W. 415); *Hutchings v. Winsor*, 92 Okla. 37 (217 P. 1044); and 38 Cyc. Trial, p. 1329. Since the interrogations manifestly sought to elicit the motive of the defendant, which was a material subject of inquiry, we believe that the error is available even though no offer of proof was made.

█ We are also of the opinion that the circuit court erred when it refused to permit the witness Baird to state that he was in such a position while seated in the automobile in front of the Goldberg home that he could see what transpired between Goldberg and the defendant. It will be recalled that the state contended that the defendant received $25 from Goldberg while the two were upon the front porch of the Goldberg home. After Baird had testified that he saw no such transac-

tion take place, defendant's counsel inquired whether he was in a position to see what took place. The circuit court sustained the district attorney's objection to this question. Since the question was intended to show the opportunities which Baird had for observing, we are of the opinion the court erred.

We have carefully examined all of the other contentions advanced by the appellant, but do not believe they reveal any reversible error. It follows from the foregoing that the judgment of the circuit court must be reversed. The cause will be remanded.

BEAN, C. J., and KELLY, J., concur.

RAND, J., dissents in part and concurs in part.

----

RAND, J., dissenting. I concur with the majority opinion in its holding that parol evidence in explanation of defendant's motive in acting as he did was admissible, but I cannot concur in the holding that the lower court committed reversible error. The record shows that the defendant explained his conduct and that, after his answer was given, an objection was made to the question calling for such explanation and that the court sustained the objection thereto, but the answer was not stricken and the jury was not told to disregard defendant's answer, nor was any offer of proof made and no additional questions were asked of the defendant in respect to his motive.

For these reasons, I dissent from the holding granting defendant a new trial.