# DELNER GULBRANDSON AND ANOTHER v.
# EMPIRE MUTUAL INSURANCE COMPANY.

87 N. W. (2d) 850.

February 7, 1958—No. 37,254.

*Thornton & Thornton,* for appellant.

*I. L. Swanson,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from judgments entered in favor of plaintiffs.

Defendant, Empire Mutual Insurance Company, of Albert Lea, Minnesota, is a mutual insurance company organized in 1935 and engaged in the business of writing hail insurance. It procures its business through soliciting agents, appointed mainly by a special agent who has charge of a specified area. The special agent also acts as adjuster for the company. The soliciting agents are employed under the terms of written contracts.

Strand Insurance Agency of Elbow Lake, Minnesota, is a partnership composed of Herman Strand, his wife, Etta, and son, James. Herman and Etta Strand have been soliciting agents for defendant since its inception in 1935 or practically from that time. James became an agent of defendant in April 1955.

Plaintiffs, Delner Gulbrandson and Wilbur Gulbrandson, are brothers, farming separately near Elbow Lake. On June 27, 1955, Herman Strand and his son, James, called at the Gulbrandson farms for the purpose of selling them hail insurance on their crops. Delner had been insured with defendant in previous years, so both brothers wanted insurance with defendant in preference to other companies. The Strands had none of defendant's application blanks with them but did have application blanks furnished by Austin Mutual Insurance Company of Minneapolis, Minnesota. The Strands accordingly filled out separate applications for insurance for each of the Gulbrandsons on blanks of the Austin company with the understanding that, upon returning to their office, they would make out applications on the proper blanks and sign them on behalf of the Gulbrandsons. It is undisputed that both Gulbrandsons authorized Herman Strand to sign in their behalf. Neither of the Gulbrandsons read the applications because they trusted Strand. They were informed that the insurance would be effective at noon of the day following the signing of these applications.

On returning to their office, the Strands prepared applications, and Herman signed the Gulbrandsons' names thereto, as he had been authorized to do. The blanks were mailed to defendant that evening. They were received by defendant, according to the stamped notation thereon, on the morning of June 29, and, after a rather superficial

examination to determine if the acreage was right and what the rate in that locality was, a policy of insurance was issued on that day.

In the meantime, on the evening of June 28, both Gulbrandsons suffered severe damage from a hailstorm. They reported the loss to Strand on the morning of June 29, and he prepared a proof of loss for them, which he mailed to the company that day. It was received by defendant on June 30, again as shown by the stamped notation thereon. Here, again, Herman Strand signed the proof of loss on behalf of both Gulbrandsons. At the bottom of the proof of loss he wrote: "This policy was applied for June 27th at 2 P. M." Upon receipt of the proof of loss by defendant it was submitted to Frank E. Dugan, the general manager of defendant. After examining the application and policy issued and the proof of loss, Dugan wrote on the back of the proof of loss: "We believe this report is bonafide but will appreciate if you will check date & time of storm," and forwarded it to A. P. Anderson, special agent and adjuster for the company at Alexandria, Minnesota.

On July 4, 1955, both Gulbrandsons sustained additional damage to their crops by another hailstorm. A few days later they informed the Strands of this loss and were informed by them that it would not be necessary to prepare another proof of loss since Anderson would call shortly to adjust the first loss and would then take care of the entire matter at one time.

Anderson called on July 8. He investigated the loss and, after doing so, negotiated an adjustment thereof with both Gulbrandsons, which he reduced to writing. Anderson signed on behalf of the company, and each of the Gulbrandsons signed an adjustment of the loss he had suffered on his respective farm. The proposed settlement was subject to approval by the company, but Anderson informed the Gulbrandsons, according to the testimony of both Strand and the Gulbrandsons, that they would receive a check as soon as the written proposal reached the company. Anderson denied having made this statement. Herman Strand testified that, when Anderson called, he was informed of the July 4 loss and that he stated that he would take care of it all at one time. The Gulbrandsons both testified in the same manner. Anderson denied that he had ever heard of the July 4 loss until

this action was commenced, but the written adjustment of loss states on its face that it settles all claims of loss prior to July 8.

Herman Strand and his wife, Etta, testified that they had attended a number of district meetings of defendant at which Dugan and Anderson instructed soliciting agents, among other things, that insurance would be effective at noon on the day following the mailing of the application to defendant. James Strand testified that he had been so instructed by Anderson when he was appointed an agent. Dugan and Anderson denied having given soliciting agents such instructions.

About ten days or two weeks after Anderson had negotiated an adjustment with the Gulbrandsons, he was instructed by defendant to go out to see them and to inform them that their insurance had not been written until June 29 and, consequently, that they had no insurance coverage for damage occurring on June 28. Anderson attempted to pick up the insurance policies and informed the Gulbrandsons that they would not have to pay the premiums thereon if they would surrender the policies. The Gulbrandsons refused to surrender the policies and later brought these actions. The jury returned a verdict in favor of both of them for the amount stated in the written adjustment of loss, with interest. Motions for judgment notwithstanding the verdict or a new trial were denied, judgments were entered, and the appeal is from such judgments.

The case involves mainly the question of whether Strand, as a soliciting agent, could bind defendant to an oral contract that the insurance would be effective prior to the actual issuance of the policy by defendant.

■ We have held that oral agreements that insurance against fire,[1] collision,[2] or workmen's compensation[3] shall take effect immediately

---

[1]Ganser v. Fireman's Fund Ins. Co. 38 Minn. 74, 35 N. W. 584; Koivisto v. Bankers & Merchants Fire Ins. Co. 148 Minn. 255, 181 N. W. 580; Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. (2d) 28; see, also, Quinn-Shepherdson Co. v. United States F. & G. Co. 142 Minn. 428, 172 N. W. 693; Prosser, *The Making of a Contract of Insurance in Minnesota*, 17 Minn. L. Rev. 567; Note, 34 Minn. L. Rev. 231.

[2]Schmidt v. Agricultural Ins. Co. 190 Minn. 585, 252 N. W. 671.

[3]Glens Falls Ind. Co. v. D. A. Swanstrom Co. 203 Minn. 68, 279 N. W. 845.

or at a time prior to the actual issuance of the policy are binding upon the company if made by an agent having authority, actual or apparent,[4] to enter into such agreement. There is even more reason why this should be so when dealing with hail insurance. Insurance against hail is intended as protection against an act of God, over which none of the parties have any control. There is usually little need to investigate the facts upon which the risk is assumed. About all that the insurer need know is the acreage and type of crop to be covered and the rate applicable throughout the locality where such crops are situated. The evidence in this case discloses that all such facts were determined in the office of the insurer except such as were included on the application, and, as to those, a very cursory check was made to see that they were correct. On the other hand, it is imperative that insurance of this type become effective as soon as possible for the reason that hail may come at any time and there is nothing the insured can do to protect against it.

■ The effect of such oral contract depends upon the authority of the agent to bind the company.[5] Ordinarily, the question of whether the agent had authority is for the jury to determine.[6]

■ Cases of this type usually involve two fact questions: (1) Did the agent of the insurer make statements and representations which would constitute an oral contract of insurance? (2) Did he have authority to bind the insurer to such contract?

In this case, determination of authority of the agent is decisive of the case. There is no dispute that the agent who sold the insurance informed plaintiffs that the insurance would be effective the next day at noon. The agent so testified. So did plaintiffs. Sidney Anderson, who is an adjuster with his father, testified that, at the time he and his father called on plaintiffs to inform them that they had no insurance coverage, plaintiffs told him that Strand had said, at the time the insurance was sold to them, that it would become effective the day

---

[4]Hertz v. Security Mutual Ins. Co. 131 Minn. 147, 154 N. W. 745, a case involving life insurance where the distinction between that type of insurance and others mentioned is discussed.

[5]See, Note, 34 Minn. L. Rev. 231.

[6]Ganser v. Fireman's Fund Ins. Co. 38 Minn. 74, 35 N. W. 584.

after the application was taken. It must follow that, if Strand had authority to bind defendant, the contract came into effect before the loss.

On the issue of authority, the evidence is conflicting, as might be expected. Herman Strand, his wife, and son, James, all of whom were engaged in soliciting insurance for defendant, testified that they had been instructed that policies issued by defendant would be effective on the noon following the day on which the application was taken. Herman Strand and his wife testified that they had attended a number of district meetings held by defendant at which they had been instructed by Mr. Dugan, the secretary and general manager of defendant, and by A. P. Anderson, a special agent for defendant, that policies would be effective the day after the application was taken. The son, James Strand, testified that he had been so instructed by Anderson when he was appointed an agent for defendant. Anderson admitted that it was part of his duties to instruct agents what they were supposed to do when he appointed them. Etta Strand testified that for a number of years, during the time they had been acting as agents for defendant, her husband had been away from home during the time applications for hail insurance were taken and that Anderson had accompanied her in the field in selling such insurance. She testified that during such times Anderson would tell her and prospective customers that, if they mailed the application in one day, the policies would be effective the next day at noon.

There is other testimony tending to corroborate such instructions. The application in this case was mailed to the company on June 27, and it is marked received on June 29. The proof of loss of Wilbur Gulbrandson is dated June 29 and is stamped received on June 30. It shows on its face that the loss occurred on June 28, and on the bottom appears the statement of Herman Strand, "This policy was applied for June 27th at 2 P. M." Mr. Dugan admitted that he had all of these facts before him when he sent the claim to Anderson for adjustment with his notation on the bottom: "We believe this report is bonafide but will appreciate if you will check date & time of storm." With full knowledge of the fact that the company had received the application on June 29 and issued the policy on that date and that the loss occurred the preceding day, June 28, Dugan still authorized the

claim to be forwarded for adjustment under a statement that he believed it to be a bona fide claim. Anderson did adjust the loss and had the insured sign a statement as to the amount thereof, which both parties had agreed upon, without making any disclaimer of liability, and it was not until some ten days or two weeks later that the company did disclaim liability.

Conceding that a soliciting agent ordinarily has no authority to bind the company to a contract, the evidence here goes much further than to show simply that the Strands were soliciting agents. Their contract with defendant bound them to abide by special instructions furnished them from time to time by the company. The jury could well find from the evidence in this case that the company, through Dugan, its general manager, had instructed Strand and other soliciting agents to sell insurance upon the assurance that it would become effective at noon of the day following the mailing of the application. The importance of prompt coverage of hail insurance would make this assurance one of the best selling points the company could devise. On the basis of those instructions, the jury could find authority on the part of the Strands to bind the company to an oral contract making effective the insurance at the time represented until the policy actually was issued.

Defendant's opposition to this evidence rests on its written instruments. Its contract with its agents, including the Strands, contains, among other things, the following provisions:

"The Agent agrees to perform all deeds as a solicitor aforesaid to the best of his ability; to be governed by the Articles of Incorporation and By-laws of the Corporation and to work under the direction of the Company according to the Laws of the State of Minn and rules and regulations of the Department of Insurance of said state, *as well as special instructions furnished him from time to time;* to thoroughly canvass the territory and promptly forward to the home office of the Company at Albert Lea, Minnesota all applications he has written and all moneys entrusted to him in payment thereof and any notices of loss that may be received by him. The Agent further agrees to be personally liable to the company for the genuineness of all applications written by him and he shall have no authority to contract for the Company or incur expense or indebtedness of any kind or accept any

waiver or bind the said Company for any purpose." (Italics supplied.)

Defendant also contends that plaintiffs are bound by their written application, which defendant contends contains the following provisions:

"I, Delner Gulbrandson * * * make this application to the Empire Mutual Insurance Company for membership and indemnity against loss—By Hail Only—to my growing crops for the term of One (1) crop season commencing at *12 o'clock noon on the date this application is accepted and approved at the Home Office of the Company in Albert Lea, Minnesota,* * * *:

 *     *     *     *     *

"I hereby agree that this Company will not be bound by any representations of the agent, not contained in the application or By-laws of the Company; and that all statements and agreements made by me herein shall be considered as warranties." (Italics supplied.)

The difficulty with defendant's contention is that its application blanks containing the above provisions were not used, but, instead, its agent used an application blank of the Austin Mutual Insurance Company. While the two blanks are somewhat similar, the Austin blank contains a provision that the insurance shall become effective "at 12 o'clock noon of the day this application is accepted and approved *at the Home Office of the Company in Minneapolis, Minnesota.*" (Italics supplied.)

Plaintiffs never saw the application sent to defendant. They authorized Strand to sign a proper application blank for them but not one with different terms from the one they had signed. If they are bound by any written instrument, it is the application they signed. It is entirely possible that, if the application had been sent to *Minneapolis* instead of *Albert Lea,* it would have reached its destination on June 28 instead of June 29 and that the oral assurances that the policy would be effective the day after the application was signed, even under defendant's testimony, would have become effective. Dugan testified that policies were always issued on the day the application was received and that they had never rejected an application in the history of the company. Strands were agents of defendant. That is

true even though defendant is a mutual company, at least up to the time when the policy and membership are actually issued.[7] If defendant's agent chose to use an application blank of another company, defendant should be bound by the terms of the instrument used and should not be able to hold plaintiffs bound by an instrument which they never saw or signed. Nor does the fact that a copy of the application was attached to the policy help defendant under these circumstances. The policies did not reach plaintiffs until the damage had occurred, and it was then too late for plaintiffs to do anything to protect themselves. We are dealing with the validity of an oral contract for insurance prior to issuance of the insurance policy, not with the validity of the policy ultimately issued. Under all the facts in this case, we think that the authority of Strands to bind defendant by an oral contract as to the effective date of the insurance was properly submitted to the jury and that its verdict is amply sustained by the evidence.

■ Defendant next contends that plaintiffs cannot recover for the loss which occurred on July 4 for the reason that no proof of loss was ever submitted to the company covering that claim. The evidence justifies a finding by the jury that, shortly after the loss occurred, plaintiffs notified Strand thereof and that he stated to them that it would not be necessary to make out another proof of loss as Anderson would be there in a few days to adjust the first loss reported and that he would then consider and adjust the entire matter at one time. Anderson did call on July 8, and, while he denies that he was ever told about the July 4 loss, the jury could accept the testimony of plaintiffs and Strand. Anderson prepared and signed, with plaintiffs, a written adjustment of loss which provides on its face that it is an adjustment of all losses sustained by the insured *prior to July 8.* When confronted with this fact at the trial, Anderson claimed that the date was a mistake and that it should have been June 28. However, the jury was warranted in believing that it was not a mistake and that Anderson's attention was actually called to the loss which occurred on July 4 and that the adjustment was intended to cover both losses. This phase

[7]Kausal v. Minnesota Farmers' Mutual Fire Ins. Assn. 31 Minn. 17, 16 N. W. 430.

of the case was submitted to the jury on the theory that, if it found a waiver of proof of loss, plaintiffs could recover. The jury obviously accepted plaintiffs' version of what happened.

The applicable law is adequately stated in Reliance Motor Co. v. St. Paul Fire & Marine Ins. Co. 165 Minn. 442, 444, 206 N. W. 655, 656, as follows:

"The general rule is that there may be an express or an implied waiver of proofs of loss and that a waiver may be inferred from any words or conduct of the insurer's authorized officers or agents evincing an intention on the part of the insurer not to insist on compliance with the requirements of the policy in respect to proofs of loss and calculated to lead the insured to believe that they will not be insisted on. * * *

"It has been held that an offer to pay the loss, *or negotiations for the settlement thereof,* may warrant a finding of waiver of formal notice and proofs of loss. * * * This is sound doctrine, for we can conceive of nothing more likely to induce the insured to believe that formal proofs of loss will not be required than an *investigation of the loss by an adjuster* for the insurer and an offer of settlement made in the course of the investigation. Such conduct is well calculated to lull the insured into a false sense of security until it is too late to comply with the requirements of the policy, if compliance is insisted on." (Italics supplied.)

Anderson was the special agent of defendant authorized to make adjustment of losses, subject to approval of defendant.[8] The evidence sufficiently sustains a waiver of proof of loss as to the damage suffered on July 4.

Affirmed.

---

[8]As to the authority of an adjuster to waive proof of loss, see First Nat. Bank v. Manchester Fire Assur. Co. 64 Minn. 96, 66 N. W. 136; Reliance Motor Co. v. St. Paul Fire & Marine Ins. Co. 165 Minn. 442, 206 N. W. 655; Brown v. Firemen's Ins. Co. 106 Neb. 615, 184 N. W. 88.