Richard W. CRAMER and Stanley W. Cramer, Plaintiffs-Appellants,

v.

Ronald C. HOFFMAN, Robert Sheldon, James W. Littlejohn and St. Lawrence University, Defendants-Appellees.

No. 215, Docket 31733.

United States Court of Appeals Second Circuit.

Argued Jan. 4, 1968.

Decided Feb. 21, 1968.

Albert Averbach, Seneca Falls, N. Y. (Walter J. Ward, Seneca Falls, N. Y., of counsel), for plaintiffs-appellants.

Carl Bachman, Watertown, N. Y. (Dunk, Conboy, McKay & Bachman, Watertown, N. Y., of counsel), for St. Lawrence University, appellee.

Verner M. Ingram, Potsdam, N. Y., for Ronald C. Hoffman, appellee.

John P. Leonard, Ogdensburg, N. Y., for Robert Sheldon, appellee.

Sidney H. Kitay, Canton, N. Y., for James W. Littlejohn, appellee.

Before LUMBARD, Chief Judge, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge:

This is a diversity case in which plaintiff, Richard W. Cramer (Richard), seeks recovery on theories of negligence for personal injuries sustained by him during football practice. Plaintiff, Stanley W. Cramer, Richard's father, sues for expenses incurred and loss of Richard's services. From a jury verdict for defendants and a denial of plaintiffs' motion for a judgment notwithstanding the verdict, plaintiffs appeal.

In April 1958, Richard, a student at St. Lawrence University (hereinafter the University), was hospitalized with the German Measles. A few days after his release from the Edward John Noble Hospital (the Hospital), he was injured at football practice while making a tackle. He was removed from the field, taken by ambulance to the Hospital, and treated there. As a result of cervical injuries sustained, Richard is paralyzed from below the chest. The participation of the defendants in the events which led to this condition upon which plaintiffs would predicate liability are set forth in six causes of action in the complaint as amended.

For a first cause of action, Richard claims that on April 16, 1958, he was discharged from the Hospital "in an ill and physically weakened condition by the action of the defendant, Erich Schaefer, a physician and surgeon employed by the defendant hospital." Dr. Schaefer's supposed negligence consisted of both the discharge and a failure to advise the University that Richard was unfit to participate in football practice. Liability is imputed to the Hospital because Dr. Schaefer is alleged to be its agent and employee. The liability of defendant Ronald C. Hoffman, the University's football coach, is premised on his allowing Richard to engage in football practice. Liability is asserted against the University because of Hoffman's alleged agency.

The second cause of action is based upon events allegedly occurring after the accident and are based upon assertions of negligent lifting and carrying "in a rough, careless and negligent manner" by *Hoffman*, Sheldon (assistant coach) and Littlejohn (trainer), employees of the University, and of failure properly to immobilize the cervical spine, which worsened and aggravated Richard's condition.

The third cause of action alleges negligence in connection with the ambulance drive to the Hospital and adds the Lawrences, owners and operators of the ambulance, as defendants.

The fourth cause of action is against the Hospital, a radiologist, Blodgett, allegedly employed by the Hospital, and Dr. Schaefer for negligence in the taking and reading of the X rays.

The fifth cause of action alleges control by the Hospital of the ambulance and

negligence by it and Dr. Schaefer in Richard's transfer to a second hospital in a neighboring town.

The sixth cause of action is for damages suffered by Richard's father for all expenses incurred and for loss of Richard's services.

At the beginning of trial in January 1967, as a result of settlement negotiations,[1] this complaint was amended to delete the Hospital as a defendant and all references to Dr. Schaefer as the Hospital's agent. A few days later, plaintiffs amended their complaint again; they now alleged that the University and its agents and employees were liable for the negligent transport of plaintiff from the Hospital to the neighboring town.

Except for the point that "The verdict of the jury was contrary to the weight of credible evidence." (Point IV), and that the court erred in charging that Dr. Schaefer's alleged negligence was not to be imputed to the University (Point III), plaintiffs rely primarily upon alleged procedural errors, namely, the court's allowing the inclusion of an affirmative defense of assumption of risk after plaintiffs had rested (Point I) and the submission by the court to the jury of special questions, copies of which were not provided to counsel before summation (Point II).

## I.

■ It is not unusual at the conclusion of a trial for counsel to move to conform the pleadings to the proof. Such a motion is based upon the theory that the court has admitted proof relevant to the action and that any pleading omissions can in this manner be corrected virtually on a *nunc pro tunc* basis. In this day of liberal pleading and disregard of pleading technicalities, amendments should be freely allowed unless some material prejudice is demonstrated. This is certainly true where the amended pleading merely adds the defense of assumption of risk— a defense similar to contributory negli-

gence and an addition which would hardly surprise plaintiffs. Witcjak v. New Franklin Coal Mining Co., 173 F.Supp. 661, 663 (E.D.Pa.1959).

The issues of negligence were meticulously set forth in the causes of action set forth in the complaint as amended and joined by the answer. The court's charge clearly expounded the legal issues which were to guide the jury to a decision. The specific questions which the jury answered in the negative were:

"Question No. 1. Has the plaintiff established by a fair preponderance of the credible evidence that he was physically unfit to engage in the football practice session on April 18, 1958?"

"Question No. 5. Has the plaintiff, Richard W. Cramer, (1230) established by a fair preponderance of the credible evidence that the initial injury sustained by him in the football play was aggravated?"

■ Since the court advised the jury to consider the assumption of risk defense only if they answered the first question affirmatively, it is difficult to imagine how plaintiffs were injured by the amendment.

Appellants' counsel now argues that the prejudice which resulted from the allowance of the assumption of risk defense stems from his selection of the jury while not knowing of this defense. In particular, he claims that he permitted two former football players, one of whom had sustained injuries while participating in the sport, to remain on the jury despite the fact that he had two unused peremptory challenges and that had he known of this defense, it was "likely" that he would have exercised these challenges.

■ There is no logical basis whatsoever for such a claim of prejudice. If counsel had not wished to have ex-football players—particularly one who had sustained injuries—on the jury, he could

---

1. Plaintiffs released the Hospital and its employees and agreed not to hold the University liable for damages in excess of $100,000. In exchange, plaintiffs received $30,000. Plaintiffs also settled with the Lawrences.

have excused them. For some reason, he desired to retain them. This was an exercise of judgment—his conception of proper trial strategy. Everyone on the jury must have been familiar with the American game of football and known that, of necessity, it involves forceful bodily contacts. Any boy who enters into the sport is bound to be subjected to these contacts when tackling or being tackled. And for whatever influence these two ex-football players were going to have on the jury, certainly they were not going to reveal to the surprise of the other members of the jury that there is a certain amount of risk in the game, which revelation could be considered by them in the jury room only if an assumption of risk defense were pleaded.

### II.

Plaintiffs' second claim is that Fed.R. Civ.P. 51 requires, by implication, that counsel be supplied with the special questions *before* summation. Plaintiffs rely on a statement in Clegg v. Hardware Mutual Casualty Co., 264 F.2d 152, 157 (5 Cir. 1959) that such presentation is "required to enable counsel intelligently to prepare requested charges, determine all of the issues which must be submitted, and then to plan an effective argument whose objective is to translate persuasion into specific decisive action by the jury."

■■ The trial court under the circumstances wisely addressed special questions to the jury. There were a number of alleged negligent acts charged against one or more of four defendants. The questions could only have been helpful to the jury in clarifying the specific issues to be determined by them in relation to the individual defendants. In our opinion the use of clearly framed special questions in appropriate cases is a commendable practice. Furthermore, the jury's answers to specific questions are often helpful to appellate courts in the consideration of issues on appeal. Whether such questions should be presented to counsel in advance of summation, however, rests within the discretion of the trial court. In this case no prejudice re-

sulted from non-disclosure in advance of summation because the questions but summarized the issues posed by the complaint and which were vital trial issues. They added nothing which could have taken plaintiffs by surprise or which would not have been covered in summation. The role which the questions played was stated by the court as follows:

> "The Court finding the answers consistent with each other and consistent with the general verdict will hand the interrogatories and the general verdict for filing; judgment shall be directed in accordance with Rule 58 of the Federal Rules of Civil Procedure."

### III.

■ Plaintiffs' third assertion of error is that the court erred in ruling, as a matter of law, that Dr. Schaefer's alleged negligence could not be imputed to the University. Again the question is academic, for the jury specifically found that the injury on the field was not aggravated.

■ Moreover, the New York rule is that an institution is not responsible for the negligence of physicians who are independent contractors exercising their own discretion. Compare Schneider v. New York Tel. Co., 249 App.Div. 400, 292 N.Y.S. 399 (1937), aff'd 276 N.Y. 655, 13 N.E.2d 47 (1938) with Mrachek v. Sunshine Biscuit, Inc., 308 N.Y. 116, 123 N. E.2d 801 (1954). In this case, there was no evidence that Dr. Schaefer did not use his discretion. The only evidence touching on his relationship to the University was a remark made by Dean Romodo, at the taking of a deposition, that Dr. Schaefer was "the college or contract physician." This statement alone is insufficient to take the independent contractor issue to the jury. "If the question of agency is not open to doubt, it is one for the court." Hedeman v. Fairbanks, Morse and Co., 286 N.Y. 240, 248, 36 N.E.2d 129, 133 (1941).

■ Furthermore, plaintiffs first alleged that Dr. Schaefer was an agent of the Hospital; they did not claim the Uni-

versity's responsibility for his actions until after the trial had begun. To allow the independent contractor issue to be litigated at that late date could have unfairly prejudiced and surprised defendants. The trial judge acted properly in ruling that Dr. Schaefer's negligence could not be imputed to the University.

## IV.

The jury's verdict was supported by the weight of the credible evidence.

Affirmed.