# FLOYD L. HAGEDORN AND ANOTHER v. AID ASSOCIATION FOR LUTHERANS.

211 N. W. 2d 154.

September 14, 1973—No. 43416.

*Christian, Slen, Savelkoul, Johnson & Broberg* and *Rolf O. Slen,* for appellant.

*Erickson, Zierke, Kuderer & Utermarck* and *Russ E. Utermarck,* for respondents.

Heard before Knutson, C. J., and Otis, Kelly, and Schultz, JJ. Reconsidered on the record en banc.

KELLY, JUSTICE.

Plaintiffs, as beneficiaries of a life insurance policy issued to their 16-year-old son, seek recovery from defendant, a fraternal benefit society, under the double indemnity provision of the insurance policy. The issue presented on this appeal is whether defendant's agent had the apparent authority to enter into an oral agreement with plaintiffs wherein the agent promised to give

to plaintiffs notice upon default in the payment of any premium in addition to the standard notice given by the company.

The essential facts in this case are not in dispute. Defendant Aid Association for Lutherans (AAL), through its agent, Donald Markman, solicited an insurance policy on the life of plaintiffs' son, Mark Hagedorn, in October 1966. Markman came to the Hagedorn home to discuss the policy application with 16-year-old Mark and his father. Plaintiff Floyd Hagedorn asked Markman specifically to notify him if his son's policy ever became "delinquent" so that plaintiff could keep the policy in force. Delinquency or default, according to the terms of the policy, occurred when the premium was not paid by the due date. Markman agreed to notify plaintiff. Thus, it could be expected that such a notice would be given during the grace period. Plaintiff further asked agent Markman if their oral agreement would remain in effect if Markman were replaced by another agent. Markman replied that the local agent always received notices of delinquency and that it was then part of his duty to contact the insured to remind him of the delinquency. This conversation took place in the presence of Mark. The policy was subsequently issued to Mark, who died in an automobile accident on December 7, 1968. It is AAL's claim that none of its agents told plaintiffs they would get a notice if the October 25, 1968, premium was not paid on its due date and that "[t]he only representation made by the agent was that plaintiffs would be contacted *after the policy lapsed by non-payment for 31 days after the premium due date.*"

Mark's quarterly premium had been due on October 25, 1968. According to its standard practice, AAL had sent a premium due notice to Mark at his parents' residence sometime in early October. Mark, who was then living in Minneapolis, picked up the notice at his parents' home but failed to pay the premium by the due date.

Under the AAL policy, if a premium is not paid by the due date, a 31-day grace period is automatically extended to the

policyholder. AAL customarily then sends a late remittance offer to the policyholder 35 days after the premium due date. This offer remains open for a month from the end of the grace period. Contemporaneous with AAL's offer to the policyholder, it sends the local agent a conservation notice in the hope that he will contact the insured about reinstating the policy. The instruction manual to agents outlined this late remittance procedure in detail. There is no indication from the record whether plaintiff understood Markman to say that Markman would contact plaintiff after the due date had passed but before the expiration of the grace period or whether he understood Markman to say that he would contact plaintiff after receipt of the conservation notice. Clearly, under the terms of the policy, delinquency, which is equated in the insurance company's brief with default occurs immediately after the due date has passed.

The grace period specified in Mark's policy expired on November 25, 1968. Ordinarily, a late remittance offer would have been prepared by the company's computer on November 29, 1968, and would have been mailed the next day. However, November 30 and December 1, 1968, were a Saturday and Sunday. Thus, if the late remittance offer were mailed on December 2, presumably it would not, in the ordinary course of the mails, have been received until December 3 or 4, 1968.

The late remittance offer is an offer which ordinarily would remain open by its terms for a month. It does not reinstate the policy (until accepted by payment of the premium) or extend the grace period, and the late remittance offer so states. In Mark's case, the offer would have been open up to about December 25 except for his death on December 7. The offer is made subject to certain conditions, the only material one in this case being that payment must be made during the life of the insured. Thus, there were only a few days for acceptance of the offer by Mark or plaintiffs—from December 3 or 4, the date on which the late remittance offer would ordinarily have been received, and December 7, the date on which he died. Whether or not such an of-

fer, if received, would have been accepted by a payment of the premium prior to Mark's death is a question, but there is evidence from which it might be found that in all probability it would have been paid promptly. There was no direct evidence at trial, however, confirming that the late remittance offer had in fact been sent. Mr. Hagedorn testified he did not recall receiving such a notice and had no knowledge about it, and there was also evidence that the agent had not received the usual conservation notice.

The policy application form which was signed by both decedent and agent Markman provided that no information given by any agent would bind the association unless such information was set out in writing in the application, and that no agent was authorized to make or alter contracts or to waive any of the association's rights or requirements.

The policy itself, which was retained in the possession of plaintiffs, specifically stated: "No agent or local branch officer may extend the time for payment of any premium or modify or waive any terms of this certificate, the articles of incorporation, bylaws, or any of the Association's rights or requirements."

Gary Steinberg, another of defendant's agents, testified that on a previous occasion he had orally notified Mr. Hagedorn directly when he received a conservation notice regarding a policy on the life of another of plaintiffs' sons. Thus, at that time, agent Steinberg did not notify plaintiffs until after the expiration of the grace period. Steinberg did, however, accept a late premium from Mr. Hagedorn at that time.

In the instant case, when Mark's policy terminated at the end of the grace period, there was a surplus of $10 which automatically paid up an additional $33 on the policy on an extended term basis. The surplus did not, however, automatically extend the double indemnity provision of the contract. Thus, Mark had $10,033 coverage at his death. Defendant contends, however, that the $20,000 double indemnity for accidental death was not in force at the time of Mark's death.

The trial court sitting without a jury found that agent Markman had, within the scope of his apparent authority, made a binding agreement to notify plaintiffs within the grace period of the policy if the premium was in default. The court pointed to the religious and fraternal nature of the organization, the age of the insured, and the reasonable expectation of parents under such circumstances as the basis for its conclusion that defendant had clothed its agent with apparent authority to enter into such an agreement. We reverse and remand for further findings of fact or a new trial in the discretion of the trial court.

The agent in this case admittedly did not have actual authority from his principal to promise plaintiffs they would be notified during the grace period in the event the policy became delinquent in payment so that they could keep it in force. Thus, the issue becomes whether or not the agent had the apparent authority to do so.

Whether an agent was clothed with apparent authority to act as he did is a question for the trier of fact. Gulbrandson v. Empire Mutual Ins. Co. 251 Minn. 387, 87 N. W. 2d 850 (1958). Upon reviewing findings made by a court sitting without a jury, this court may order a reversal even though there may be evidence to support the findings if, on viewing the entire evidence, we are left with a firm conviction that a mistake has been made. State, by Head, v. Paulson, 290 Minn. 371, 373, 188 N. W. 2d 424, 426 (1971).

Apparent authority is that authority which the principal holds the agent out as possessing or knowingly permits the agent to assume. Hockemeyer v. Pooler, 268 Minn. 551, 130 N. W. 2d 367 (1964). This court in Duluth Herald & News Tribune v. Plymouth Optical Co. 286 Minn. 495, 176 N. W. 2d 552 (1970), quoted with approval Restatement, Agency 2d, § 27, which provides in part:

"* * * [A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third

person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

Thus, as a prerequisite to holding that defendant's agent was acting within his apparent authority, one must point to some conduct on the part of defendant AAL which, reasonably interpreted, would have caused the plaintiffs to believe that AAL consented to the actions of agent Markman in promising them the notice in question. Plaintiffs contend that Markman's apparent authority was based upon plaintiff's prior dealings with AAL. As stated, there is evidence that on an earlier occasion agent Steinberg had notified Mr. Hagedorn of the default of payment on an older son's policy after the running of the grace period and the company had thereafter accepted the premium.

A careful reading of the transcript does not disclose any acts or conduct on the part of the defendant insurance company that, reasonably interpreted, should have caused the plaintiffs or the deceased to believe that AAL had consented to the making of a binding agreement by its agent Markman to notify plaintiffs within the grace period of the policy of any defaults in premium payments. Nor was there any showing that it was usual or customary for insurance agents to have that kind of authority.

Restatement, Agency § 49, Comment c, notes:

"Acts are interpreted in the light of ordinary human experience. If a principal puts an agent into, or knowingly permits him to occupy, a position in which according to the ordinary habits of persons in the locality, trade or profession, it is usual for such an agent to have a particular kind of authority, anyone dealing with him is justified in inferring that he had such authority in the absence of reason to know otherwise."

We have concluded that there was no basis for the trial court's finding that the agent of AAL had apparent authority to promise that plaintiffs would be notified of a delinquency during the grace period. If we had concluded otherwise, we would reach the question whether plaintiffs had reason to know of any limita-

tions on agent Markman's authority that might negate any apparent authority to make the representation in question.

Our reason for remanding this case is that the trial court did not make findings as to the admitted authority of agent Markman to represent that a late remittance notice would be given to plaintiffs, that he did make such a representation to the plaintiffs, that plaintiffs then were entitled to receive a late remittance notice from AAL, that such a notice was in effect an offer to reinstate the policy by payment of the premium in default subject to certain conditions, the only material one here being that the insured be alive; that in the normal course of events the late remittance notice should have been sent to plaintiffs' home and received in time for plaintiffs to have paid the premium and thus to have effected the reinstatement of the policy. All of these facts appear to be conceded. Further findings should be made as to whether or not AAL failed to send the late remittance offer, and whether or not under all the facts and circumstances in this case there was a great probability that plaintiffs would have accepted the offer to reinstate the policy by paying the premium prior to their son's death.

We are not impressed with the emphasis by AAL on the fact that the policy had lapsed. The agent did have authority to represent and did represent that notice would be given whereby the policy might be reinstated by payment of the premium in default if the insured was alive and subject to the conditions not here important. The insured and plaintiffs had a right to assume that such a late remittance offer would be made. Had the late remittance offer been received and the premium paid, a reinstatement of the policy would have the same effect as a payment of premium during the grace period and before the policy had lapsed.

The evidence is such that there are fact questions as to whether or not the late remittance offer was sent and received by the insured or plaintiffs and as to whether or not the premium in default would have been paid prior to Mark's death. We therefore

remand this case so that the court may make findings of fact on these and all other appropriate matters.

If the trial court finds as fact that the late remittance offer was not sent and that the premium would have been paid by the plaintiffs or by Mark prior to his death, it follows that the policy should be considered as though it had been reinstated for this would be the only way of measuring damages for the authorized representation that was not carried out.

We also direct that in the discretion of the trial court a new trial may be ordered, as it may be fairer to all concerned in that we have narrowed the issues.

Reversed and remanded for further findings, with discretion granted to the trial court to grant a new trial.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.