682 F.2d 323
 CUTLASS PRODUCTIONS, INC., Individually and as General
Partner of Cutlass Productions, and Frank P.
Rosenberg, Plaintiffs-Appellees,
v.
Martin BREGMAN, Martin Bregman Productions, Inc. and AEC
Productions, Limited, Defendants-Appellants.
 No. 1077, Docket 82-7062.
 United States Court of Appeals,
Second Circuit.
 Argued April 1, 1982.
Decided June 11, 1982.
 
 1
 Irving P. Seidman, New York City (Joel L. Hecker, Thomas F. Ryan, Allen P. Rosiny, Seidman & Dochter, P. C., Hess, Segall, Guterman, Pelz & Steiner, New York City, of counsel), for defendants-appellants.
 
 
 2
 Walter E. Rutherford, New York City (Alan D. Reitzfeld, Haight, Gardner, Poor & Havens, New York City, of counsel), for plaintiffs-appellees.
 
 
 3
 Before FEINBERG, Chief Judge, WINTER, Circuit Judge, and MISHLER, District Judge.*
 
 MISHLER, District Judge:
 
 4
 Plaintiff-appellees instituted this diversity action in federal district court in June 1980. The amended complaint stated three claims for relief arising out of a course of dealings between the parties in connection with the now released motion picture entitled "VENOM".
 
 
 5
 Plaintiff Frank P. Rosenberg ("Rosenberg") and defendant Martin T. Bregman ("Bregman") at all relevant times have been engaged in the production of motion pictures. In the winter in 1977, Rosenberg and Bregman competed in a bidding for an option contract on the motion picture rights to an unpublished novel upon which the film Venom is based.[1] Shortly after Bregman outbid Rosenberg on the option contract, Rosenberg telephoned him about the possibility of their working together on the film's production. The conversations and writings between the parties concerning that subject occurring over the two and one-half years following Rosenberg's March 1977 telephone call to Bregman constituted the major part of Rosenberg's case at trial in support of his breach of contract claim. Plaintiffs' pleading stated that Rosenberg and Bregman had "entered into an oral agreement and joint venture to jointly produce" VENOM. Plaintiffs sought an accounting as well as punitive damages for defendants' alleged malicious and fraudulent breach of the joint venture which culminated in Bregman's unilateral termination of the relationship on February 19, 1980.
 
 
 6
 In response to the special interrogatories given to the jury after eight days of trial which had generated some 1500 pages of transcript, the jury rejected plaintiffs' contention that defendants had breached an oral partnership agreement to co-produce VENOM.[2] However, in affirmatively answering Interrogatory 2(a) of the special interrogatories[3] and thereafter rejecting defendants' Statute of Frauds defense,[4] the jury found that defendants had breached "an (enforceable) oral agreement, though not a partnership" to co-produce VENOM. Finally, the jury found that plaintiffs were not entitled to an award of punitive damages.
 
 
 7
 At trial and on appeal, defendants contend that the manner in which the theory of a non-partnership oral agreement was submitted to the jury injected a degree of confusion and prejudice into the case constituting reversible error. We agree. We also believe that (1) defendants were unfairly prejudiced by the failure of the district court to disclose the contents of the special interrogatories to counsel before summation and (2) the interrogatories, as drawn by the district court, improperly withdrew from the case a valid theory of defense which had been urged by defendants throughout the trial. Defendants presented a number of other challenges to the judgment entered below which we do not reach.[5]
 
 DISCUSSION
 
 8
 Plaintiffs' contention throughout the case was that the parties had orally entered into a joint venture agreement to co-produce VENOM. They cited the enormous quantity of paper produced by Rosenberg and his attorneys as evidence of their efforts to reduce the existing oral joint venture agreement to a writing. Bregman consistently denied that there ever had been an agreement. Instead, he characterized the deluge of written correspondence from Rosenberg and the various conversations admitted into evidence as proof only of the on-going negotiations concerning an offer to Rosenberg to serve in his employment when the picture was actually shot in London.[6] The corollary to Bregman's position was that if the jury were to find an agreement, it was an employment contract, not a partnership contract, and under its terms Rosenberg could be discharged for cause. At trial Bregman conceded that Rosenberg was entitled to the reasonable value for such contributions as he had made to the VENOM project prior to his termination.
 
 
 9
 After both sides had rested, the district court endeavored to sharpen the issues presented by the case. Specifically, it was unclear to the district court whether plaintiffs had attempted to establish alternative contract claims. It had conceived of two different contracts, each containing essentially the same terms (e.g., with respect to Rosenberg's share in the proceeds of the film as well as his management control over the business and creative aspects of the project).
 
 
 10
 The district court properly elicited the assistance of plaintiffs' counsel for the purpose of crystalizing the theory of their case. Plaintiffs' counsel had substantial difficulty in discerning a meaningful distinction between the two hypothetical contracts as propounded by the court and therefore resisted the court's view of the case.[7] Nevertheless, either having been convinced that the non-partnership contract claim was a genuine alternative claim or sensing that submission was the more prudent course, plaintiffs' counsel ultimately adopted the court's view of the case.
 
 
 11
 Defendants timely objected to the submission of the non-partnership contract theory contending that, as presented in the special interrogatories, it was confusing because it failed to comprehensibly and fairly define the issues for the jury to resolve.[8] Further, defendants argued that Interrogatory 2(a) effectively withdrew from the case its theory of defense that, as a mere employee, Rosenberg could be discharged for just cause.
 
 A. Confusion Created by Interrogatory 2(a)
 
 12
 The single difference between the two contract claims, as framed by the district court, was that only one was based on a theory of partnership. After much searching, we believe the distinction was wholly irrelevant except insofar as plaintiffs might have proved their partial performance of an oral partnership agreement thereby defeating defendants' Statute of Frauds defense. Sanger v. French, 157 N.Y. 213, 51 N.E. 979 (1898); Green v. Le Beau, 281 App.Div. 836, 118 N.Y.S.2d 585 (2d Dep't. 1953). However, the district court did not present to the jury these alternative contract claims with that significance in mind.
 
 
 13
 Rule 49(a) of the Federal Rules of Civil Procedure provides for special verdicts and interrogatories and, in relevant part, states that "the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate." Needless to say, in order to preserve the right of the litigants to a jury trial of all factual issues, the wide discretion afforded the district court in submitting issues to the jury by way of special interrogatories is circumscribed by the requirement that they clearly present the material fact issues raised by the pleadings and evidence.[9] See Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 279 (2d Cir. 1979), cert. denied, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); Simien v. S. S. Kresge Co., 566 F.2d 551, 555 (5th Cir. 1978). In the instant case, we believe that the special interrogatories submitted to the jury, considered in conjunction with the district court's charge, failed to conform to this standard.
 
 
 14
 Interrogatory 2(a), set out in the margin at note 3, presented a legal theory which had never been argued by the parties and which we had been unable to understand in the context of this case. A logical and unavoidable corollary to our confusion is that the jury also was incapable of distinguishing "an oral partnership agreement" (Interrogatory 1(a)) from "an oral agreement, though not partnership," (Interrogatory 2(a)) and we so find.
 
 
 15
 Based upon the pleadings and the evidence, we believe that the following three contractual issues should have been submitted to the jury:
 
 
 16
 (1) Was there an agreement between the parties to co-produce VENOM?
 
 
 17
 (2) Was there an employment contract between the parties in connection with the production of VENOM? and
 
 
 18
 (3) Was there an agreement to hire Rosenberg as an independent contractor in connection with the production of VENOM?[10]
 
 
 19
 Had the jury answered any of the foregoing questions affirmatively, then it should have been submitted additional questions concerning the following ancillary issues:
 
 
 20
 (1) the nature of the responsibilities of the parties,
 
 
 21
 (2) whether there was a provision for termination, and(3) the nature of plaintiffs' injury, i.e., a loss in the share of profits,[11] quantum meruit or some other formula.
 
 
 22
 Interrogatory 2(a) addressed none of these subordinate fact issues.[12] The omission of these material issues and the confusion inherent in Interrogatory 2(a) concerning the nature of the legal theory supporting the judgment entered each independently constitute reversible error.[13]
 
 
 23
 B. The Withdrawal of Defendants' Theory of Defense
 
 
 24
 The district court submitted the special interrogatories to the jury after the jury had been in deliberation for more than four hours. Prior to their submission, defendants' counsel objected to the format in which the special interrogatories were presented. The objection was articulated in sufficient detail stating that, as presented, Interrogatory 2(a) was prejudicial because it withdrew from the case one theory of defense asserted throughout the trial. Indeed, Bregman took the position at trial that it had been his prerogative to terminate Rosenberg from the VENOM project because of his insubordination in connection with his unauthorized communications with Orion Pictures.[14] However, an affirmative answer to Interrogatory 2(a), while establishing defendants' liability, would not have been inconsistent with defendants' theory of the case assuming that the jury believed the parties had entered into an employment contract. Defendants' counsel timely requested that the issue of "discharge for cause" be specifically presented in the interrogatories. The request was denied.
 
 
 25
 In its post-trial opinion, the district court explained that the general charge to the jury "more than adequately explained defendants' theory of defense." After carefully reviewing the instructions given to the jury, we disagree. We cannot say that the district court's brief reference to defendants' contention that Rosenberg was Bregman's employee reasonably apprised the jury of the issue of "discharge for cause."
 
 
 26
 As previously stated, defendants' objections to the special interrogatories came approximately four hours after the jury had retired. The hour was late in the day and the court had been in session for nearly twelve hours. The court rejected defendants' argument out of hand because it would have required the court to recharge the jury. Nevertheless, the circumstances did not justify the court's refusal to modify Interrogatory 2(a). While we recognize that the trial court is given broad discretion in framing interrogatories under Rule 49(a), see, e.g., Cann v. Ford Motor Co., 658 F.2d 54, 58 (2d Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982); Ajax Hardware Manufacturing Corp. v. Industrial Plants Corp., 569 F.2d 181, 187 (2d Cir. 1977), such discretion cannot be exercised in a manner which withdraws from the jury's consideration a valid theory of defense upon which defendant has produced sufficient evidence. See e.g., Ajax Hardware Manufacturing Corp. v. Industrial Plants Corp., 569 F.2d at 187; Kornicki v. Calmar S.S. Corp., 460 F.2d 1134, 1139 (3d Cir. 1972). The submitted question (Interrogatory 2(a)) "created an unfair obstacle to the jury's returning an answer favorable to the (defendants)." Cann v. Ford Motor Co., 658 F.2d at 58.[15] Accordingly, the judgment entered in favor of plaintiffs must be vacated and the case remanded for a new trial.[16]
 
 
 27
 Plaintiffs contend that defendants' objection to the failure to charge on the defense of "discharge for cause" has been waived since it was made subsequent to the time the jury had retired. Rule 51, Fed.R.Civ.P.; see e.g., Clark v. John Lamula Investors, Inc., 583 F.2d 594, 602 (2d Cir. 1978). Plaintiffs' claim is without merit. Their argument serves to highlight the error committed by the district court in not presenting the special interrogatories to counsel until after the jury had retired. In pertinent part, Rule 49(a) deprives a litigant of his right to a jury trial on issues not presented in the special interrogatories "unless before the jury retires he demands its submission to the jury." (emphasis added). To prohibit defendants from preserving their objections under these circumstances would result in a denial of their right to a trial by jury. Defendants' objections to the form of the special interrogatories have been preserved for appeal. Cf. Bentley v. Stromberg-Carlson Corp., 638 F.2d 9, 12 (2d Cir. 1981).
 
 
 28
 C. The Untimely Disclosure of the Special Interrogatories
 
 
 29
 In its post-trial motion for a judgment n.o.v., defendants argued that the district court erred in failing to apprise counsel of the contents of the special interrogatories prior to summation. The district court rejected the challenge to its procedures since it had generally informed the attorneys during the requests to charge as to the issues which would be submitted to the jury.
 
 
 30
 The decision not to supply counsel with the special interrogatories before summation rested within the district court's broad discretion. See Cramer v. Hoffman, 390 F.2d 19, 23 (2d Cir. 1968). However, contrary to the ruling below, we believe that defendants were severely prejudiced by their inability to review the special interrogatories prior to summation. It is clear that the alternative theory of contractual liability, first articulated on the seventh day of trial, created considerable confusion for both counsel and the district court. The difficulty in defining the issues on the eve of submitting the case to the jury is one factor which persuades us that the district court should have supplied counsel with the special interrogatories before summation.
 
 
 31
 As fashioned by the district court, Interrogatory 2(a) presented to the jury the issues of whether the parties had entered a non-partnership agreement and, if so, whether defendants breached the agreement. The jury's attention was never directed, either by Interrogatory 2(a) or by the district court's general charge, to the issue of whether plaintiffs had committed a prior breach of the agreement. This issue was the linchpin of Bregman's defense in the event the jury found that the parties had entered into an employment contract, a relationship fairly encompassed by the phrase "an oral agreement, though not a partnership." Although defendants chose not to allot any of their limited time for summation to the issue of "discharge for cause," it would be inappropriate under the circumstances to speculate why this topic was not addressed. We are convinced that defendants would have argued this vital trial issue had the district court disclosed the contents of Interrogatory 2(a) prior to summation. The non-disclosure prejudiced defendants in planning an effective closing argument and constituted reversible error.
 
 
 32
 While the panel in Cramer v. Hoffman did indicate that whether jury interrogatories should be presented to counsel in advance of summation rests in the discretion of the trial court, the panel went on to make clear that no prejudice had resulted from non-disclosure in advance of summation. We believe it is the better practice under Rule 49(a) to submit special interrogatories to counsel prior to summation.[17]
 
 
 33
 The judgment is vacated, the special verdict is set aside and the case remanded for a new trial.[18] The parties shall bear their own costs.
 
 
 
 *
 Honorable Jacob Mishler, United States District Judge, Eastern District of New York, sitting by designation
 
 
 [1]
 Rosenberg conducted his business affairs in the motion picture industry through his production company Cutlass Productions, Inc. Similarly, Bregman's business dealings were conducted through his production companies Martin Bregman Productions, Inc. and AEC Productions Limited. The production companies were joined in this action because of their participation in the alleged joint venture between Bregman and Rosenberg
 
 
 [2]
 Special Interrogatory 1(a) read as follows:
 Have plaintiffs sustained their burden of proving by a fair preponderance of the credible evidence, that there was an oral partnership agreement between plaintiffs and defendants to co-produce the motion picture entitled "VENOM" and that defendants breached that partnership agreement?
 
 
 [3]
 Special Interrogatory 2(a) read as follows:
 Have plaintiffs sustained their burden of proving by a fair preponderance of the credible evidence, that there was an oral agreement, though not a partnership, between plaintiffs and defendants to co-produce the motion picture entitled "VENOM," and that defendants breached that agreement?
 
 
 [4]
 We note only in passing that the district court's jury charge on the Statute of Frauds was clearly deficient. However, in view of our disposition of the case directing retrial on all issues, we believe it is unnecessary to address that challenge now before us
 After finding for plaintiffs in its answer to special Interrogatory 2(a) and 2(b), the jury, based on the instructions in the special interrogatories, failed to pass on plaintiffs' other alternative claims for the unauthorized use, conversion and misappropriation of Rosenberg's ideas and concepts and for quantum meruit.
 
 
 [5]
 Before the district court submitted the special interrogatories to the jury, defendants contended that, in the absence of the jury finding that the parties had entered into an oral partnership agreement, the court could not order the relief of an accounting and the issue of damages must be submitted to the jury. The district court dismissed this objection at trial and in its decision denying defendants' motion for a judgment n.o.v. On appeal, defendants continue their challenge to the failure of the district court to submit the question of damages to the jury in connection with the jury's finding of an oral non-partnership agreement
 We reserve for another day the issue of whether the district court's decision to order an accounting violated defendants' rights under the Seventh Amendment. Nevertheless, we note the district court incorrectly addressed that question solely as one of New York law. The question was and is one "to be determined as a matter of federal law" even though jurisdiction was predicated upon the diversity of citizenship statute. See e.g., Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (per curiam).
 
 
 [6]
 Bregman consistently argued that Rosenberg had been offered a subordinate employment position as a line producer. A line producer is a person who acts as the "field officer" during the shooting of the film and is present on a day-to-day basis
 
 
 [7]
 In the course of the discussion between the district court and plaintiffs' counsel on the requests to charge, the articulation of the theory of an oral non-partnership agreement to co-produce first emerged:
 "THE COURT: Well, Mr. Rutherford, do you want to enlighten us on whether you are claiming (1) there was joint partnership or joint venture agreement, and also, separate and apart from that, are you also claiming that there was an oral agreement between the parties to produce this motion picture?
 "MR. RUTHERFORD: Well, the specific answer to your question, Judge, is I think they are included. Our claim has been that there was an oral agreement between Bregman and Rosenberg as partners to co-produce the motion picture VENOM.
 Furthermore, they agreed to share every-all monies from that 50/50 and to share all business and Creative Control 50/50.
 "THE COURT: That was part of the agreement.
 (MR. RUTHERFORD): Now, your Honor, that is an oral partnership agreement for one specific project-
 "THE COURT: Or a joint venture.
 "MR. RUTHERFORD: Or a joint venture. Exactly.
 "Now, at a later time, at the end of 1977, the defendants raised the question about using a joint format-a joint venture format. We told them, as evidence from this testimony by Mr. Manus today, that we had no problem with the joint venture format but if they wanted to make it a tripartite agreement, that was equally fine with us, because the partnership to produce would still go forward.
 "So whether or not the ultimate format was joint venture, which was the original understanding, or later a tripartite which Mr. Strick wrote in his letter that we read to the jury today, 'I thought we had agreed to a tripartite agreement with Paramount,' that was all right with us.
 "But the basic understanding was: We are partners on this one project, splitting everything 50/50. So I think your Honor has correctly framed the issue of: Was there an oral agreement between the parties to act as partners in co-producing the picture?
 (Tr. at 1322-24) (Tr. refers to the Joint Appendix).
 The district court attempted a second time, although also without success, to clarify the unperceived distinction:
 "THE COURT: Well, your running two things together, Mr. Rutherford. You're not listening.
 "There is one claim by you, I think, that there was an oral agreement to have a joint partnership or joint venture.
 "Quite aside from that, I think you're claiming that there was an oral agreement between the parties to produce this motion picture as evidenced by these letters.
 "MR. RUTHERFORD: I think its all one transaction, Judge."
 (Tr. at 1324).
 Finally, plaintiffs' counsel acceded to the theory that there was a claim for an oral non-partnership agreement to co-produce as an alternative claim to their partnership theory:
 "THE COURT: Well, let me ask you this: What do you say is the significance of these letters that we have put in?
 "MR. RUTHERFORD: The letters are evidence that corroborates the oral agreement and overcomes any defense of the statute of frauds.
 "THE COURT: Yes, that's what I'm saying.
 "It's an oral agreement reached by the parties in those letters which the parties intended to be their agreement with the lawyers merely formalizing it that they had an agreement at that point, or as the defendants say, the intent of the parties was that there be a formal written agreement signed by both parties before there could be an agreement.
 "MR. RUTHERFORD: I see what your Honor is saying. And yes, there is an oral agreement, and yes, the letters themselves can constitute an agreement.
 "THE COURT: In other words, there is an oral agreement, you say, which is outside the statute of frauds because there's sufficient memoranda in these letters to take it out of the statute of frauds.
 "MR. RUTHERFORD: Yes.
 "THE COURT: And another claim is-the second one-that they have a joint partnership agreement as evidenced by the letters and it was the intent of the parties that that was their agreement with the lawyers later simply reducing it to writing and that it was a mere formality but they intended the letters to be their agreement.
 "MR. RUTHERFORD: Yes. It clearly can be presented both ways.
 (Tr. at 1324-26).
 
 
 [8]
 The following discussion between the court and defense counsel following the charge to the jury further illustrates the district court's difficulty in distinguishing the two different contracts:
 "THE COURT: As I already indicated, it wasn't easy to figure out what plaintiff was really saying.
 "(Plaintiffs) were seeking 50 percent of the profits to be made from the picture which has not yet been distributed.
 "MR. HECKER: That is only if there was a partnership agreement, your Honor.
 "THE COURT: What was the oral agreement, the same thing, to co-produce and he was to be paid as indicated."
 (Tr. at 1522-23) (emphasis added).
 
 
 [9]
 See 5A Moore, Federal Practice, P 49.03(2) (2d ed. 1981); 9 Wright & Miller, Federal Practice and Procedure § 2506 (1971)
 
 
 [10]
 Whether there is sufficient evidence to support this third enumerated theory is unclear. If it appears to the district judge upon retrial that sufficient evidence exists, then the issue should be submitted to the jury
 
 
 [11]
 Judge Motley's submission of Interrogatory 2(a) withdrew from the jury the damage issue predicated upon the assumption that the agreement between the parties provided for a 50/50 split of profits. However, in ordering defendants to distribute to plaintiffs "one-half of all future monies and other proceeds received or earned by defendants from their production of the motion picture 'VENOM' ", Judge Motley afforded plaintiffs the opportunity to share in the profits of a product which was very likely different from the one which would have been released had Rosenberg participated in the production of the film as a line-producer. This measure of damages does not purport to put plaintiffs in the position they would have been in but for the contract breach. Accordingly, there having been no determination concerning the similarity between the produced version of VENOM and the one which would have been produced, Judge Motley employed an incorrect measure of damages. See Perma Research & Development v. Singer Co., 542 F.2d 111, 116 (2d Cir.), cert. denied, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976)
 
 
 [12]
 See Section B, infra, discussing the withdrawal of defendants' theory of defense that Rosenberg was discharged in accordance with any agreement which the parties might have entered into
 
 
 [13]
 See note 16, infra, discussing the possibility of inconsistent jury findings
 
 
 [14]
 Orion Pictures is the film studio which financed the VENOM project during the fall of 1979 and the winter of 1980
 
 
 [15]
 In concluding that the submission of the issues in the form of the special interrogatories presented to the jury constituted an abuse of discretion, we have found that each of the factors identified in Dreiling v. General Electric Co., 511 F.2d 768, 774 (5th Cir. 1975), militate in favor of that finding. Those factors include:
 (i) whether, when read as a whole and in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury; (ii) whether the submission of the issues to the jury was 'fair,' and (iii) whether the 'ultimate questions of fact' were clearly submitted to the jury.
 Id. (citations omitted).
 
 
 [16]
 The case is remanded for a retrial on all the issues. Interrogatories 1(a) and 2(a) were drafted with reference to the existence or absence of a partnership relationship. Although the district court had charged the jury early in the evening that the terms "joint venture" and "partnership" were interchangeable, no such reminder was stated later that evening at the time the interrogatories were delivered to the jurors
 If the jurors had possessed the interrogatories for their review during the time of the general jury charge, we would assume that the court's charge concerning the synonymous meaning of the two terms would have impressed the jurors throughout the course of their deliberations. However, we are concerned that the jury, in dutifully and diligently responding to the written interrogatories, responded affirmatively to the literal question posed in Interrogatory 2(a) after having found a joint venture. Such a response would be inconsistent with its response to Interrogatory 1(a) and would require a reversal and remand for a new trial. 5A Moore, Federal Practice, P 49.03(4) (2d ed. 1981).
 Given the difficulty in distinguishing between the two types of agreements presented in Interrogatories 1(a) and 2(a) and the jurors' inability to contemporaneously consider the special interrogatories and the general jury charge, the jury must have been unclear as to whether "an oral agreement, though not a partnership" encompassed a joint venture. Upon receiving the special interrogatories late at night and after four hours of deliberation, the literal language of the special interrogatories was probably given undue weight. "Even if any juror had remembered the oral instructions, the written interrogator(ies) would surely settle conclusively any question in the mind of any juror. And it was the question in the interrogatory which the jury answered and not anything else." Geller v. Markham, 635 F.2d 1027, 1037 (2d Cir. 1980) (Lumbard, J., dissenting), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1980).
 Under the circumstances of this case, we cannot rely on the jury finding in Interrogatory 1(a). See Griffin v. Matherne, 471 F.2d 911, 915-16 (5th Cir. 1973); 5A Moore, Federal Practice P 49.03(4).
 
 
 [17]
 Compare, Smith v. Danyo, 585 F.2d 83 (3d Cir. 1978) (interpreting Rule 49(a) to require that special interrogatories be submitted to counsel prior to summation); Clegg v. Hardware Mutual Casualty Co., 264 F.2d 152, 156-57 (5th Cir. 1959); but see Brown v. Tennessee Gas Pipeline Co., 623 F.2d 450, 455 (6th Cir. 1980)
 
 
 [18]
 On appeal, defendants also contend that the district court erred in denying their motion for a judgment n.o.v. However, since defendants failed to renew their motion to dismiss at the close of all the evidence the motion was properly denied. See e.g., Mattivi v. South African Marine Corp., 618 F.2d 163, 167 n.3 (2d Cir. 1980); 5A Moore, Federal Practice P 50.08