**Audrey L. COMMERFORD, Appellant,**

v.

**Ronald O. OLSON,**

**Miller & Schroeder Municipals, Inc., Appellee.**

No. 85–5056.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1985.

Decided July 2, 1986.

Rehearing and Rehearing En Banc Denied Aug. 7, 1986.

**1320**

Daniel P. Taber, Minneapolis, Minn., for appellant.

W. Michael Drake, Minneapolis, Minn., for appellee.

Before ROSS, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Audrey L. Commerford appeals from a final judgment entered in the District Court for the District of Minnesota upon a jury verdict in favor of Miller & Schroeder Municipals, Inc. For reversal appellant argues that the district court erred in failing to submit to the jury a requested special verdict form on apparent authority. For the reasons discussed below, we reverse and remand.

Appellant is a retired librarian. During the summer of 1979, appellant sold her house in New York and moved to Little Rock, Arkansas. Appellant realized about $65,000 from the sale of her house and deposited the money in her checking account.

Appellee is a municipal bond firm, which has offices in several states and headquarters in Minnesota. In 1977 appellant's nephew, Ronald O. Olson, joined appellee as a vice-president and bond salesperson. Olson was licensed by the state of Minnesota and by the Securities and Exchange Commission to sell municipal bonds for appellee. A bond salesperson may sell bonds away from the office and at any time. Olson was one of appellee's top bond salespersons.

Because of appellant's deteriorating mental and physical condition, appellant's deposition, taken in December 1981, was submitted at trial in lieu of testimony in person. Olson testified for appellant and his testimony generally corroborated appellant's theory that Olson had misrepresented his intention to invest her money in municipal bonds through appellee. The testimony revealed the following.

In July 1979 Olson informed appellant that he could invest her money in a bond fund in order to earn a higher rate of return than her checking account. Appellant agreed to invest her money. Appellant had no prior experience in securities and relied on Olson's advice.

On July 14, 1979, appellant mailed a check for $45,000, made payable to Olson personally, to Olson at his home address. Appellant made the check payable to Olson because he told her that he would have to combine her check with other customers' money in order to obtain the highest rate of return.

On July 19, 1979, Olson mailed a handwritten note to appellant. The note was written on plain memo paper; the note, however, was enclosed in one of appellee's business envelopes. The note stated in part: "Money arrived and is already working for you. Your check August 2 will be for $173.44. And then starting September and each month thereafter $346.87.... Please let me know as soon as you get additional cash and we will put it to work for you right away." The note was signed "Love, Ron and Liz." "Liz" refers to Olson's wife.

On September 13, 1979, appellant sent another check for $10,000, made payable to Olson, to Olson at his home address. During the fall of 1979, appellant received two checks from Olson drawn on his personal checking account, ostensibly as "interest income" from her investment.

On April 15, 1980, appellant sent $13,000 by wire transfer to Olson's personal checking account. Appellant did not receive any more "income" checks from Olson but, after she inquried about future checks, in the summer of 1980 she received two checks from Olson's wife drawn on her checking account.

Olson did not invest appellant's money but instead converted the money to his personal use. Appellee was unaware of the fraud. From November 1979 until May 1980 Olson was on an extended leave of absence from appellee. In February 1980 appellant had called Olson at appellee's offices and had been told Olson was on a leave of absence. Appellee's vice-president testified that in the securities industry employees on leave of absence status cannot lawfully engage in securities transactions and are considered terminated. Appellant, however, believed that Olson was still employed by appellee.

In May 1980, appellee discovered that Olson had received $161,000 from his in-laws, the Olafsons, under the pretense that he would invest the money in a mutual bond fund. Olson had not invested this money but instead converted it to his personal use. Appellee officially terminated Olson and cancelled his license to sell bonds through appellee.

In September 1980, appellant's attorney called appellee's president to inquire about appellant's account. Appellee's president confirmed that Olson had not opened an account for appellant with appellee.

In March 1981, the Minnesota authorities revoked Olson's securities license. Olson was later prosecuted for securities fraud for the Olafsons' investment but not for appellant's investment. Olson filed a petition in bankruptcy in January 1981.

Appellant filed this action against Olson and appellee in October 1981, alleging, *inter alia*, violations of state and federal securities laws, common law fraud, breach of contract, and vicarious liability. Appellant sought compensatory and punitive damages, interest and attorney's fees. Olson did not answer and a default judgment was eventually entered against him. Before trial appellant voluntarily dismissed her federal and state statutory claims based on "controlling person" liability against appellee. The sole issue on appeal concerns appellee's liability for Olson's acts based on common law agency principles.

At trial appellant requested jury instructions and special verdict forms on the basis of two theories of vicarious liability—scope of employment and apparent authority. The district court instructed the jury on both scope of employment and apparent authority but refused, over appellant's objection, to submit a special verdict form which included the apparent authority theory as a basis of liability.

On appeal appellant asserts that the district court erred in failing to submit her requested special verdict form on apparent

authority. Appellee asserts that it is unnecessary for this court to address this issue. Relying on this court's decision in *Myzel v. Fields,* 386 F.2d 718 (8th Cir.1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968), appellee asserts that § 20 of the Securities Act of 1934, which provides for "controlling person" liability, preempts recovery under common law agency principles.[1] In *Myzel v. Fields* this court, in reviewing the adequacy of jury instruction under § 20, stated that "liability is [not] governed by principles of agency." *Id.* at 738. However, in concluding that any error in the instruction was harmless because the language of the instruction was more restrictive than the statutory language, this court stated "[f]urthermore, under common law principles, a principal is liable for the deceit of his agent committed in the very business he was appointed to carry out." *Id.*

Although the Third Circuit has read *Myzel v. Fields* as support for the position that in some instances § 20 supplants common law agency principles, *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 885 (3d Cir.1975), we believe the Second Circuit's interpretation is more accurate. The Second Circuit has "assum[ed] that common law principles of agency would apply to impose liability on a principal for an agent's deceit committed in the business he was appointed to carry out." *Marbury*

*Management, Inc. v. Kohn,* 629 F.2d 705, 714 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). *See also Nye v. Blyth Eastman Dillon & Co., Inc.,* 588 F.2d 1189, 1200 (8th Cir.1978) (assumes § 20(a) does not support common law claims). In any event, *Myzel v. Fields* did not expressly hold that § 20 does or does not supplant common law liability and therefore this issue must still be decided by this court.[2]

■ Although appellee is correct that the Ninth Circuit has held that § 20 supplants liability under common law agency principles, *Hatrock v. Edward D. Jones & Co.,* 750 F.2d 767, 777 (9th Cir.1984), it is the only circuit that has so held. The Third Circuit has held that the doctrine of respondeat superior is applicable in certain securities cases, such as a broker-dealer fraud. *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d at 886; *see also Sharp v. Coopers & Lybrand,* 649 F.2d 175, 180 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). The First Circuit has recently held that "[§] 20(a) does not preclude the assertion of liability—based on common law notions of 'apparent authority' —against a corporation for the misrepresentations of an important officer." *In Re Atlantic Financial Management, Inc.,* 784 F.2d 29, 35 (1st Cir.1986). The Second, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits have held that federal securities

---

1. Section 20(a) of the Securities Act of 1934 (the Act) provides in pertinent part:

    (a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

    15 U.S.C. § 78(t).

2. In *Myzel v. Fields,* 386 F.2d 718, 738 (8th Cir.1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968), this court stated that the Act "has been interpreted as requiring only some means of discipline or influence short of actual direction to hold a 'controlling

person' liable." In *Metge v. Baehler,* 762 F.2d 621 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986), this court cited this language in approving a district court's formulation of a two-pronged test to determine "controlling person" liability of a lender. In *Metge v. Baehler,* this court found insufficient evidence for controlling person liability. This court, however, reversed the district court's grant of summary judgment because it found sufficient evidence of an aiding and abetting violation under Section 10(b) of the Act, and also reversed the district court's dismissal of pendent state law claims of common law fraud. This court did not expressly address the issue of whether § 20 supplants common law liability and "[w]e are unwilling to read [*Metge v. Baehler* ] as deciding by implication the question before us on this appeal." *Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1116 (5th Cir.1980).

law does not preempt common law agency principles as a basis for recovery. *Henricksen v. Henricksen*, 640 F.2d 880, 887 (7th Cir.), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981); *Paul F. Newton & Co. v. Texas Commerce*, 630 F.2d 1111, 1119 (5th Cir.1980); *Marbury Management, Inc. v. Kohn*, 629 F.2d at 716; *Holloway v. Howerdd*, 536 F.2d 690, 696 (6th Cir.1976); *Carras v. Burns*, 516 F.2d 251, 259 (4th Cir.1975); *Kerbs v. Fall River Industries, Inc.*, 502 F.2d 731, 741 (10th Cir.1974).

We agree with those circuits that have addressed the issue and held that there is no basis for believing that "[§] 20(a) was intended to narrow the remedies of customers of brokerage houses or to create novel defenses in cases otherwise governed by traditional agency principles. On the contrary [§] 28(a), 15 U.S.C. § 78bb, specifically enacts that the rights and remedies provided by the [19]34 Act shall be in addition to any and all rights and remedies that may exist at law or in equity." *Marbury Management, Inc. v. Kohn*, 629 F.2d at 716. "To utilize common law agency principles to determine secondary liability for violations of the securities acts does not expose corporations, employers, and other such potential defendants to strict liability for all acts of their agents or cause them to be insurers of their agent's actions." *Paul F. Newton & Co. v. Texas Commerce*, 630 F.2d at 1119. "The familiar requirements of agency that the agent act ... within 'his actual or apparent authority serve to restrict the scope of the principal's liability.'" *Id.*

We now address appellant's assertion that the district court erred in failing to submit her requested special verdict form on apparent authority. As noted earlier, the district court instructed the jury on appellant's two theories of liability—scope of employment and apparent authority. However, the submitted special verdict only asked the jury "Was Ronald Olson acting within the scope of employment with Miller & Schroeder, Inc. when plaintiff sent Olson the [three sums of money]?"

"While the trial court has broad discretion in framing interrogatories for special verdict pursuant to Fed.R.Civ.P. 49(a), ... this discretion does not warrant withdrawing from the jury valid theories of recovery upon which a plaintiff has produced sufficient evidence." *Ajax Hardware Manufacturing v. Industrial Plants Corp.*, 569 F.2d 181, 187 (2d Cir.1977) (reversible error to fail to submit alternate theories of recovery in special verdict forms). *See also Cutlass Productions, Inc. v. Bregman*, 682 F.2d 323, 328 (2d Cir.1982) (discretion of district court to frame special verdicts "cannot be exercised in a manner which withdraws from the jury's consideration a valid theory of [recovery] upon which a [party] has produced sufficient evidence"; numerous errors in special verdicts constituted reversible error).

In the instant case, contrary to appellee's assertion, Minnesota recognizes apparent authority as a basis for vicarious liability. Under Minnesota law the elements of apparent authority are as follows:

The principal must have held the agent out as having authority, or must have knowingly permitted the agent to act on its behalf; furthermore, the party dealing with the agent must have actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf; and the proof of the agent's apparent authority must be found in the conduct of the principal, not the agent.

*Truck Crane Service Co. v. Barr-Nelson, Inc.*, 329 N.W.2d 824, 826 (Minn.1983) (citation omitted). *See also Vacura v. Haar's Equipment, Inc.*, 364 N.W.2d 387, 391 (Minn.1985). Under Minnesota law, "[a]pparent authority has only limited effect. It exists only as to those third persons who learn of the manifestation from words or conduct for which the principal is responsible." *Duluth Herald & News Tribune v. Plymouth Optical Co.*, 286 Minn. 495, 498–99, 176 N.W.2d 552, 555 (1970) (footnote omitted). "The manifestation of the principal may be made directly

to a third person, or may be made to the community, by signs, by advertising, by authorizing the agent to state that he [or she] is authorized or by continuously employing the agent." 286 Minn. at 500, 176 N.W.2d at 556 (citation and emphasis omitted).[3]

■ We hold that after instructing the jury on apparent authority the district court erred in failing to submit a special verdict on apparent authority. The special verdict as submitted " 'created an unfair obstacle to the jury's returning a verdict favorable to [appellant].' " *Cutlass Productions, Inc. v. Bregman*, 682 F.2d at 329 (citation omitted). In a somewhat similar securities fraud case the Fourth Circuit has found reversible error where a district court belatedly instructed the jury on apparent authority but failed to amend the special verdict form. *Carras v. Burns*, 516 F.2d at 259.

Accordingly, the judgment of the district court is reversed and remanded for a new trial.[4]

ROSS, Circuit Judge, dissenting.

I respectfully dissent. No error was committed here because appellant failed to produce sufficient evidence to warrant submission of the apparent authority theory to the jury. Under Minnesota state law "the proof of the agent's apparent authority must be found in the conduct of the princi-

pal, not the agent." *Truck Crane Service Co. v. Barr-Nelson, Inc.*, 329 N.W.2d 824, 826 (Minn.1983) (citation omitted). "[A]s a prerequisite to holding that defendant's agent was acting within his apparent authority, one must point to some conduct on the part of defendant * * * which, reasonably interpreted, would have caused the plaintiffs to believe that [the defendant] consented to the actions of [the agent]." *Hagedorn v. Aid Association for Lutherans*, 297 Minn. 253, 211 N.W.2d 154, 158 (1973). "An agent's apparent authority results from statements, conduct, lack of ordinary care, or other manifestations of the principal's consent, whereby third persons are justified in believing that the agent is acting within his authority." *McGee v. Breezy Point Estates*, 283 Minn. 10, 166 N.W.2d 81, 89 (1969).

The Supreme Court of Minnesota, in *Truck Crane Service Co., supra,* found the following factors "insufficient as a matter of law to support a finding of apparent authority sufficient to bind the principal": the employee had been secretary-treasurer for defendant company and no steps had been taken to inform plaintiff company that he no longer held that office; the employee's name appeared on the company's checks as secretary-treasurer; the employee answered the telephone at the company office, did other general office work for the company, and the company knew or should have known of such conduct by the

---

3. At oral argument appellee suggested that appellant failed to produce sufficient evidence of apparent authority to warrant submission of the issue to the jury. We disagree. There was evidence from which a jury could infer that Olson acted with apparent authority. Appellee conceded it had little control over the time or place of bond sales; Olson had access to appellee's stationery and mailed his memo of receipt in appellee's envelope; and when appellant telephoned in February 1980, although appellee informed her that Olson was on leave of absence, apparently appellee did not inform her at that time Olson was unlicensed to sell securities.

4. We would suggest on remand that the jury instructions should be reformulated to clearly "define key legal terms such as 'agent' and 'apparent authority.' " *Federal Enters., Inc. v. Greyhound Leasing & Fin. Corp.*, 786 F.2d 817, 821

(8th Cir.1986) (reviewing adequacy of agency jury instructions under Missouri law). Furthermore, the instructions should include the Minnesota requirement that " '[e]very person who undertakes to deal with an agent is put on inquiry and must discover whether the agent has the authority to complete the proposed act.' " *Truck Crane Serv. Co. v. Barr-Nelson, Inc.*, 329 N.W.2d 824, 827 (Minn.1983) (citation omitted).

We also suggest that more specific special verdict forms be drafted. At trial and on appeal appellee asserted that there was no fraud but rather that appellant gave Olson the monies as a loan or gift. From the special verdicts submitted to the jury, it is impossible to determine whether the jury in fact believed the transactions were induced by Olson's representations, as appellant asserts, or were given as loans or gifts, as appellee asserts.

employee. *Truck Crane Service Co. v. Barr-Nelson, Inc., supra,* 329 N.W.2d at 826.

In this case the record establishes even less conduct on the part of the principal that might support a finding of apparent authority. As in *Truck Crane,* the evidence does not establish "an affirmative course of conduct by the principal that would constitute holding out or even knowingly permitting" Olson to engage in the complained-of conduct. *Id.* The majority opinion fails to point to sufficient evidence tending to show this "affirmative course of conduct" on the part of the appellee. The conduct set forth in footnote 3 clearly is not sufficient under *Truck Crane.*