DULUTH HERALD & NEWS TRIBUNE v.
PLYMOUTH OPTICAL COMPANY.

176 N. W. (2d) 552.

April 10, 1970—No. 41964.

*Lester L. Sokol,* for appellant.

*John J. Killen, Jr.,* and *Reavill, Neimeyer, Johnson, Fredin &*
*Killen,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and
Theodore B. Knudson, JJ.

THEODORE B. KNUDSON, JUSTICE.*

Appeal by defendant Plymouth Optical Company, from a judg-
ment awarding plaintiff recovery in the sum of $2,470.10.

*Acting as Justice of the Supreme Court by appointment pursuant
to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

In 1964, Paul McJames and Dr. Warren Reyburn (an optometrist who lived near Duluth and who at the time of this action was employed by defendant) organized Paul's Opticians, Inc., a Minnesota corporation (hereinafter referred to as Paul's). Paul's entered into a franchise agreement with Plymouth Optical Company whereby the former was authorized by the latter to use the Plymouth Optical Company trade name in connection with the operation of Paul's Duluth store.

McJames as president and general manager of "Plymouth Optical Company" entered into a contract with plaintiff which provided that plaintiff would print advertisements in its papers at specified rates for "Plymouth Optical Company" located in Duluth. This contract was executed on November 22, 1964. It was renewed by McJames and William R. Srnec, store manager, in the name of "Plymouth Optical Company" on November 1, 1965, and renewed again by Srnec as store manager in the name of "Plymouth Optical Company" on November 1, 1966.

Under the 1966 renewal, plaintiff provided advertising services in the sum of $2,470.10 which Paul's failed to pay. Plaintiff sued defendant on the theory of apparent authority of Paul's representatives to bind defendant.

Not only did Paul's Duluth store use the name Plymouth Optical Company in executing the contract with plaintiff, but it paid plaintiff with checks imprinted with the name "Plymouth Optical Company." Its advertisements in plaintiff's papers were in the name "Plymouth Optical Company"; it had that name on its office sign and door; and it was listed in the telephone and city directories as "Plymouth Optical Company."

Paul's Duluth store, in fact, was merely a franchise holder of defendant with no actual or implied authority, at least at the outset, to bind defendant.

The case was tried by the court without a jury. The trial judge made the following findings of fact:

"1. That an optical business was conducted at 8 East Superior Street at all times relevant herein.

"2. That said business held itself out as being 'Plymouth Optical Company,' as shown in city directories and telephone books, as well as the advertising that is the subject matter of this lawsuit.

"3. That on November 22, 1964, Paul McJames, as President and General Manager, signed a contract with plaintiff for certain advertising.

"4. That on November 1, 1965, Paul McJames, as General Manager, and William R. Srnec, Store Manager, entered into another contract with plaintiff for advertising.

"5. That on November 1, 1966, William R. Srnec, Store Manager, entered into another contract with plaintiff for advertising.

"6. That on November 9, 1967, plaintiff had due and owing it the sum of $2,470.10 for advertising under the aforementioned contracts.

"7. That, in fact, Paul's Opticians, Inc. actually operated the business at 8 East Superior Street.

"8. That if anyone should have discovered that Paul's Opticians, Inc. exceeded its authority, it should have been defendant Plymouth Optical Company, who had all the facts."

Upon these findings of fact the trial court based the following two conclusions of law:

"1. That plaintiff was entitled to rely on the apparent authority of Paul McJames and William R. Srnec to bind Plymouth Optical Company.

"2. That defendant owes plaintiff a sum of $2,470.10, together with interest from November 9, 1967, and its costs and disbursements herein."

Defendant appeals, contending the findings of fact do not support the conclusions of law.

■ When an action is tried by the court without a jury, its findings are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly con-

trary to the evidence. Viking Automatic Sprinkler Co. v. Viking Fire Protection Co. 280 Minn. 250, 159 N. W. (2d) 250.

Because defendant failed to provide a transcript, this court is not cognizant of the evidence upon which the trial court based its findings of fact, conclusions of law, and order for judgment. In reliance on Noltimier v. Noltimier, 280 Minn. 28, 157 N. W. (2d) 530, plaintiff suggests that the appeal be dismissed. See, Rules 110 and 111, Rules of Civil Appellate Procedure. However, this court has concluded that we can dispose of this appeal upon the basis of defendant's contention that it is only challenging the conclusions of law. Our review is limited to consideration of whether they are supported by the findings.

■ The trial court determined by its findings that the business conducted at 8 East Superior Street in Duluth was held out as being "Plymouth Optical Company"; that, implicitly, such holding out, as to this plaintiff at least, continued for a period of 3 years; that the same was over such an extended period of time that if Paul's authority was exceeded by its representatives, it should have been discovered by defendant Plymouth Optical Company, which had all the facts concerning the relationship and either knew or should have known of its operations. From these findings, the trial court concluded that the plaintiff was entitled to rely upon the apparent authority of Paul McJames and William R. Srnec to bind Plymouth Optical Company.

Plaintiff relies principally on Lindstrom v. Minnesota Liquid Fertilizer Co. 264 Minn. 485, 119 N. W. (2d) 855, and Restatement, Agency (2d) § 27. The latter states that—

"* * * apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

Apparent authority has only limited effect. It exists only as

to those third persons who learn of the manifestation from words or conduct for which the principal is responsible.[1]

The general rule is that a principal is bound not only by the agent's actual authority but also by that which the principal has apparently delegated to him. 3 Am. Jur. (2d) Agency, § 73.

In McGee v. Breezy Point Estates, 283 Minn. 10, 22, 166 N. W. (2d) 81, 89, this court said:

"* * * An agent's apparent authority results from statements, conduct, lack of ordinary care, or other manifestations of the principal's consent, whereby third persons are justified in believing that the agent is acting within his authority. Therefore, the scope of apparent authority is determined not only by what the principal knows and acquiesces in, but also by what the principal should, in the exercise of ordinary care and prudence, know his agent is doing."

We recognized in McGee that the principal may be estopped by his conduct to deny liability to third persons.[2] In Lindstrom we discussed the application of the rule of estoppel in a fact situation similar to the one presented in this case. There we said:

"* * * It is well settled that, in so far as third parties are

---

[1] Restatement, Agency (2d) § 8, comment a.

[2] "* * * Plaintiffs are brought within the rule that if the principal has by voluntary act placed an agent in such a situation that a person of ordinary prudence is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third persons from denying the agent's authority." McGee v. Breezy Point Estates, 283 Minn. 10, 22, 166 N. W. (2d) 81, 90.

"Thus, if a principal acts or conducts his business, either intentionally or through negligence, or fails to disapprove of the agent's act or course of action so as to lead the public to believe that his agent possesses authority to act or contract in the name of the principal, such principal is bound by the acts of the agent within the scope of his apparent authority as to any person who * * * has reasonable ground to believe, that the agent has such authority, and in good faith deals with him." 3 Am. Jur. (2d) Agency, § 74.

concerned, the relationship of principal and agent may be evidenced by acts on the part of the alleged principal or appearances of authority he permits another to have which lead to the belief that an agency has been created. Gardner v. Hermann, 116 Minn. 161, 133 N. W. 558; Sinclair v. Investors Syndicate, 125 Minn. 311, 146 N. W. 1109; Matthews & Co. Inc. v. Pehrson, 178 Minn. 618, 225 N. W. 921. It has been held that, where a party permits his name to be used on property or equipment which is placed under the control or direction of another and thus makes such other an ostensible agent, an agency by estoppel will result. Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061; Sinclair v. Investors Syndicate, *supra.* In Restatement, Agency (2d) § 8, comments *a* and *b*, this principle is expressed and illustrated as follows:

" '*(a)* Apparent authority results from a manifestation by a person that another is his agent, the manifestation being made to a third person and not, as when authority is created, to the agent.'

" '*(b)* The manifestation of the principal may be made directly to a third person, or may be made to the community, *by signs, by advertising,* by authorizing the agent to state that he is authorized, or by continuously employing the agent.' " 264 Minn. 494, 119 N. W. (2d) 861.

In Lindstrom defendant leased its Farmington branch to one Weaver. Weaver operated as if he were the agent of defendant; that is, defendant's name was printed on the buildings, tanks, and equipment with nothing to indicate Weaver was actually a lessee. Plaintiff, who supplied materials to Weaver, was allowed recovery from defendant under the rule of apparent authority quoted above. The trial court found that defendant by its actions had created a situation in which third parties could be misled into thinking that Weaver was defendant's agent or employee and therefore was liable.

In a further discussion of estoppel in the Lindstrom case, we quoted the following from a strikingly similar case on the facts:

"In Manning v. Leavitt Co. 90 N. H. 167, 5 A. (2d) 667, 122 A. L. R. 249, a department store leased a portion of the store to another for use as a beauty parlor and authorized the use of its name in advertisements of the tenant. Plaintiff who had sustained burns from an electrical apparatus while undergoing hair treatment in the beauty parlor sued the store owner for damages. She testified that she had patronized the beauty parlor because defendant had 'always advertised very extensively * * * I thought it was a good store and I went in there.' There, in holding the defendant might be liable, the court stated (90 N. H. 170, 5 A. [2d] 670):

" 'The evidence was sufficient to establish all of the necessary elements of an estoppel; (1) a representation made with the authority of the defendant that it conducted a beauty parlor, under such circumstances that the defendant could foresee that women might act upon it to their possible prejudice, thus imposing upon the defendant a duty to avoid the misapprehension, (2) a belief in the mind of the plaintiff that the fact was as thus misrepresented, and a submission to the care of the shop and its employees in reliance upon that belief, and (3) consequent prejudice to the plaintiff. * * *

* * * * *

" '* * * if the defendant wished to avoid the duty to act in reference to the situation this apparently created, it should have refused to be a party to the misrepresentation and have taken steps reasonably calculated to remove misapprehension from the public mind.' " 264 Minn. 495, 119 N. W. (2d) 862.

In McGee, Lindstrom, and Manning, as here, it was contended by defendant that the contract precluded liability. To this point, in Lindstrom, we said:

"* * * [C]ontractual provisions to the effect that a party to a contract shall not be considered as agent or employee of the other have repeatedly been held not to foreclose findings that nevertheless the former was the agent or employee of the latter." 264 Minn. 494, 119 N. W. (2d) 861.

See, Annotation, 116 A. L. R. 457, 461.

Applying the rule of apparent authority to the findings of the trial court, we conclude that the conduct of defendant franchiser in authorizing and permitting the franchisee in this case to use the name "Plymouth Optical Company" for 3 years under the circumstances disclosed by the findings and the limited record created an apparent authority in the franchisee to bind defendant franchiser, and accordingly defendant is liable as principal for the advertising services furnished it by plaintiff.

Defendant contends that franchising is a new way of business life which will be disrupted by the imposition of liability under the circumstances of this case. We are not impressed that this will be the effect of our decision. Franchisers can protect themselves from liability by insuring that their franchisee outlets make it clear to their customers and creditors that they are not dealing with a franchiser but with an independent business as a franchisee.[3] This can be accomplished in the name it employs and in advertising which candidly discloses the relationship which exists.[4]

Affirmed.

---

[3] In Lindstrom v. Minnesota Liquid Fertilizer Co. 264 Minn. 485, 496, 119 N. W. (2d) 855, 862, we met this contention as follows: "In Annotation, 116 A. L. R. 457, 462, the editor comments as follows:

" '* * * In addition, these agreements [between oil producing corporations and local distributors of their products] commonly provide * * * that the company's signs, trademarks, etc., shall be placed on the buildings, trucks, tank wagons, etc.; that the "agent" and his employees shall not be deemed employees of the company, which shall not in any event be liable for the negligence of the "agent" or his employees * * *,' and cites numerous decisions holding that under such circumstances there may be a finding of ostensible agency as between the producer and its local distributor. As indicated above, to avoid liability in such situations the corporate producer may display its properties in such a way as 'to remove misapprehension from the public's mind' as to the actual ownership of the local business involved."

[4] Many franchise operations in the form of retail chain outlets employ names such as Gamble's "Authorized Dealer" or other names to indicate to customers and creditors alike that the outlet is not operated by the franchiser.