*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0631**

Builders Commonwealth, Inc.,
Respondent,

vs.

Jason Morgan Worsfold,
Appellant.

**Filed February 2, 2015
Affirmed
Hooten, Judge**

St. Louis County District Court
File No. 69DU-CV-13-787

Jeremy M. Hurd, Orman Nord & Hurd P.L.L.P., Duluth, Minnesota (for respondent)

Jason Morgan Worsfold, Duluth, Minnesota (pro se appellant)

Considered and decided by Hooten, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Pro se appellant, a member of a construction workers' cooperative, challenges the district court's judgment requiring him to return a portion of the payments respondent cooperative advanced to him under the membership agreement, arguing that the payments were wages "due or earned" under Minn. Stat. § 181.79 (2014). Because the advance

payments under the membership agreement are not wages "due or earned," and the membership agreement provides that respondent may recover excess advance payments that exceed revenues from its members, we affirm.

## FACTS

Respondent Builders Commonwealth, Inc. (Builders) is a construction workers' cooperative organized under the Minnesota Cooperative Law. *See* Minn. Stat. §§ 308A.001–.995 (2014). As a cooperative, Builders is governed by articles of incorporation and bylaws. *See id.*, .131, .165. The bylaws allow Builders to conduct business through an executive committee, a board of directors, and its members.

In 1998, appellant Jason Morgan Worsfold became a member of Builders when he signed a membership agreement. That agreement states in part:

> 5. Advances of money, or property made to me by the association out of estimated or actual revenues . . . shall constitute advance payments of my share of the association's revenues, in the nature of loans, and as a set-off against my share of the association earnings. . . . In the event that said advances during any fiscal year shall exceed the share of association revenues to which I [am] entitled, I agree that I will repay such excess to the association at the times and in the manner as the board of directors of the association shall determine.

Worsfold remained a member of Builders until he left the cooperative midway through the 2011 fiscal year. During his time as a member of Builders, Worsfold, like all members, received biweekly advance payments. Under the membership agreement, these payments were based on Worsfold's individual patronage contribution to the cooperative and were premised on a projection of Builders' anticipated profits for the year. At the

end of each fiscal year during Worsfold's tenure as a member of Builders, the board of directors adjusted the advances proportionally for each member. If Builders' actual year-end profits were greater than the profits Builders initially projected it would earn, Builders would allocate the excess earnings to its members based on their individual contributions to the cooperative. If actual profits were less than anticipated, the board determined how Builders would recover the excess payments it advanced to members in order to balance its books.

During the 2009 and 2010 fiscal years, Builders' actual profits were lower than anticipated. At both the 2009 and 2010 annual members meetings, the board voted to recover a portion of the advances made to members, and thus balance its books, by requiring each member to pay back a portion of the member's advances. Worsfold attended both of these meetings. The record does not indicate that Worsfold ever objected to Builders' decision to allocate its losses in this manner.

In the 2011 fiscal year, actual profits were again lower than expected. At the 2011 members meeting, the board determined that members would pay back roughly one-third of their 2011 advances. During his time as a member of Builders in the 2011 fiscal year, Worsfold received $17,563.55 in biweekly advances. The board's repayment scheme required Worsfold to pay back $5,800.07, an amount representing Worsfold's unearned share of Builders' overly optimistic projection of profits during the 2011 fiscal year. Since Worsfold was no longer a member of the cooperative, Builders also determined that Worsfold needed to pay back his outstanding pre-2011 payback total of $2,634.02, which Builders had not previously attempted to collect. In order to recoup the $8,434.09

3

in excess payments that Builders had advanced to Worsfold, Builders first reduced Worsfold's equity stake in the cooperative, then valued at $4,545.85, to zero. Builders then requested that Worsfold directly pay back to Builders the remaining balance of $3,888.24. Worsfold refused.

Builders then sued Worsfold and six other members to recoup the excess advances made to members. On appeal from conciliation court, the district court consolidated the cases and conducted a court trial. The district court granted judgment to Builders after it determined that nothing in the bylaws or membership agreement prevented Builders' attempts to recoup the excess advances. In doing so, the district court determined that the advance payments made by Builders to Worsfold were not wages "due or earned" under Minn. Stat. § 181.79 and that the statute did not prohibit Builders from recouping the excess advance payments from its members. Worsfold appealed this decision without the assistance of counsel. When Worsfold was informed that the trial transcript was not part of the record delivered to this court, he chose not to request delivery because he had already filed his brief.

## D E C I S I O N

Worsfold argues that the district court erred in concluding that Minn. Stat. § 181.79 does not preclude Builders from recovering the excess advances. He further argues that even if that statute does not bar recovery, Builders' own bylaws prevent the board from demanding direct repayment of the advances.

**I.**

Before considering Worsfold's two claims of error, we analyze whether he supplied this court with an adequate record to review the appeal as he never requested that the trial transcript be delivered to this court.

Appellants have the burden to provide this court with an adequate record. *Mesenbourg v. Mesenbourg*, 538 N.W.2d 489, 494 (Minn. App. 1995). The record is adequate if it is "sufficient to show the alleged errors and all matters necessary for consideration of the questions presented." *Truesdale v. Friedman*, 267 Minn. 402, 404, 127 N.W.2d 277, 279 (1964). The record on appeal consists of all "documents filed in the trial court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ. App. P. 110.01. It is appellant's responsibility to order a transcript "of those parts of the proceedings not already part of the record which are deemed necessary for inclusion in the record." Minn. R. Civ. App. P. 110.02, subd. 1(a). When an appellant fails to provide a transcript, appellate review is "limited to whether the trial court's conclusions of law are supported by the findings." *Mesenbourg*, 538 N.W.2d at 494 (citing *Duluth Herald & News Tribune v. Plymouth Optical Co.*, 286 Minn. 495, 498, 176 N.W.2d 552, 555 (1970)). If the issues on appeal are legal, and the record is not so inadequate as to preclude a determination of the arguments made before the district court, dismissal is not necessary. *Id.*

We believe dismissal is not necessary here. The record sufficiently lays out the legal issues on appeal; namely, whether section 181.79 or Builders' own bylaws preclude the cooperative from recovering the excess advance payments. But Worsfold's failure to

deliver the transcript for our review means he cannot challenge any of the district court's factual findings, and we may only analyze whether the district court's factual findings support its legal conclusions. *See id.*

## II.

Worsfold argues that the district court erred in concluding that section 181.79 does not prevent Builders' recovery. Appellate courts interpret the meaning of statutes de novo. *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014).

Section 181.79, entitled "Wages deductions for faulty workmanship, loss, theft, or damage," states in part:

> No employer shall make any deduction, directly or indirectly, from the wages due or earned by any employee, who is not an independent contractor, for lost or stolen property, damage to property, or to recover any other claimed indebtedness running from employee to employer, unless the employee, after the loss has occurred or the claimed indebtedness has arisen, voluntarily authorizes the employer in writing to make the deduction or unless the employee is held liable in a court of competent jurisdiction for the loss or indebtedness.

Minn. Stat. § 181.79, subd. 1(a). In *Brekke v. THM Biomedical, Inc.*, the supreme court noted that this section does not define "wages." 683 N.W.2d 771, 774 (Minn. 2004). To effectuate the intent of the legislature, the court imported the definition of "wages" supplied by the legislature elsewhere in chapter 181 and defined "wages" as "all compensation for performance of services by an employee for an employer." *Id.* at 775 (quotation omitted). This judicially-constructed definition is as valid as a definition

6

written in the statute. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012). While the supreme court noted that, under this section, wages must be earned or due, it did not provide a rubric to analyze the earned-or-due requirement. *See Brekke*, 683 N.W.2d at 775.

Worsfold does not believe that this case turns on whether his payments were "due or earned." Instead, he relies on an unemployment case, *Builders Commonwealth, Inc. v. Department of Employment and Economic Development*, in which we affirmed an unemployment-law judge's determination that (1) Builders' members are employees, (2) the advance payments Builders makes to its members are wages, and (3) Builders is required to pay unemployment-insurance taxes. 814 N.W.2d 49, 57–58, 60 (Minn. App. 2012).

The district court correctly concluded that our decision in the unemployment case is inapplicable here. In that case, the issue was whether the compensation received by Builders' members met the unemployment-insurance statutes' definition of wages. *Id*. at 58. But when we discussed the meaning of "wages," we specifically explained that wages do not include loans or return on invested capital. *Id.* We did not discuss what constitutes wages under section 181.79 or what makes wages "due or earned" under that section. *See id.* Worsfold's argument relies upon section 181.79; he is confined to that section's requirement that wages must be "due or earned" to be shielded from an employer's attempts to recover them. *See Karl v. Uptown Drink, LLC*, 835 N.W.2d 14, 18, n.4 (Minn. 2013) (holding that *Brekke*'s definition of "wages" controls when a claim implicates section 181.79).

7

In determining whether wages are "due or earned," the district court relied primarily upon *Meyer v. Mason Publ'g Co.*, 372 N.W.2d 403 (Minn. App. 1985). In that case, Meyer's compensation included commissions on book sales. *Id.* at 404. After customers returned their purchases and received a refund, Meyer was no longer entitled to his previously-awarded commissions on the cancelled sales. *Id.* To recover the payments, Mason deducted 20% from Meyer's future commissions. *Id.* We determined that section 181.79 did not preclude Mason's deductions because Meyer was only entitled to commissions on actual sales. *Id.* at 405. Since Meyer was paid commissions on since-cancelled sales, we reasoned that section 181.79 did not preclude Mason's deductions. *Id.* Those commissions were neither "earned" nor "due" to him. *See id.* *Meyer* can be read to state that Mason's recoupment efforts were not deductions from earned pay; they were merely adjustments necessary to determine the actual compensation Meyer earned.

The district court's factual findings about Builders' compensation scheme supports its legal conclusion that section 181.79 does not bar recovery of Worsfold's unearned advances. The district court found that the advance payments are "subject to adjustment at the end of the fiscal year" based on the amount of business that members conducted with Builders and the "share of the association revenues." Because the cooperative's actual revenues and profits are not known until the end of the fiscal year, this necessarily implies that the advances will be adjusted, unless Builders realizes the exact profit level it projects. When Builders' actual profits are lower than projected, the members will have received excess advances throughout the year to which they were never entitled. The district court found that payments to members were adjusted based

8

on profits, implicitly finding the payments were not "earned" until profits were realized, justifying the level of each biweekly payment. Since Builders' year-end adjustment scheme is similar to Mason's adjustments to Meyer's unearned commissions, the district court's factual findings sufficiently support its sound legal determination that section 181.79 does not bar recovery of advance payments to employees, when those payments are not earned.

**III.**

Worsfold also raises a number of arguments that are premised on his belief that Builders operated outside the scope of the bylaws and membership agreement he signed. The existence of a contract and its provisions are factual determinations, *Morrisette v. Harrison Int'l Corp.*, 486 N.W.2d 424, 427 (Minn. 1992), but we interpret the meaning of those provisions de novo, *Roemhildt v. Kristall Dev., Inc.,* 798 N.W.2d 371, 373 (Minn. App. 2011), *review denied* (Minn. July 19, 2011). When multiple instruments are part of the same transaction, we construe the agreements as one contract. *Id.* Courts should attempt to construe and "harmonize" all of the provisions of a contract when possible. *Telex Corp. v. Data Prods. Corp.*, 271 Minn. 288, 293, 135 N.W.2d 681, 685 (1965).

The district court determined that the parties entered into a valid contract consisting of both the membership agreement and bylaws. The bylaws state that Builders may allocate *losses* through its executive committee. The membership agreement states that Builders' board may seek *repayment* of *excess* advances. The district court found that, while the minutes for Builders' members meeting for the 2011 fiscal year were not

9

entirely clear, the board did seek repayment of the excess payments it advanced to members because actual profits were lower than anticipated. We agree with the district court's determination that the board was plainly authorized to act in the manner in which it did.

Worsfold argues that, according to Builders' bylaws, only the executive committee, not the board, is allowed to allocate losses. But this case is not about Builders' executive committee allocating losses; it is about the board seeking to recover excess payments made to members under the authorization provided by the membership agreement. As the district court noted, neither the membership agreement, nor the bylaws, limited the power of the board to determine the time and manner in which members were obligated to pay back excess advances. Worsfold's interpretation would render the repayment provision of the membership agreement meaningless, violating the rule that courts should attempt to "harmonize" and unite all provisions of a contract. *Id.*

Worsfold next challenges the board's actual repayment calculations. He claims that his early withdrawal means that he should not have to pay back the full one-third of his advance payments as other members who did not leave were required to do. His early withdrawal is not relevant. The district court noted that the board's repayment formula was based on the *amount* of money advanced to members, not the *duration* a member belonged to the cooperative.

Based upon these findings, we agree with the district court's well-reasoned legal conclusion that Builders was entitled to recoup the excess advance payments made to Worsfold under its membership agreement.

**Affirmed.**